IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

**ERIK CURRAN,**

    **Plaintiff,**

v.                                                          CIVIL ACTION NO.: 2:07-0354
                                                                        (Judge John T. Copenhaver)

**AMAZON.COM, INC.,** a Delaware
corporation; **GETTY IMAGES, INC.,**
a Delaware corporation; **ST. MARTIN'S
PRESS, LLC, SIDESHOW INC.,** d/b/a
**SIDESHOW COLLECTIBLES,** a
Delaware corporation; **HOT TOYS LTD.,**
a business entity incorporated in Hong
Kong; and **CAFÉ PRESS.COM, INC.,** a
Delaware corporation,

    **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

In support of its Motion to Dismiss, St. Martin's Press, LLC submits this Memorandum of Law.

### I. FACTS

St. Martin's Press, LLC is a publisher of non-fiction and fiction books and is the publisher of Michael Smith's book, *Killer Elite*. *(See copy of book jacket attached hereto and marked Exhibit A.) Killer Elite* is a non-fiction, extensively researched look at special operations activity since the abortive attempt to rescue the Iranian hostages in 1980. The author, Michael Smith, writes on defense for the *Sunday Times of London* and was named the 2006 United

Kingdom Press Awards Specialist Writer of the Year. He is a former member of the British Army's Intelligence Corps and the author of other non-fiction books.

The thrust of Mr. Curran's Complaint vis a vis St. Martin's Press is that his picture has been used on the cover of the book, *Killer Elite*, and he has not been compensated for that use.[1] In Paragraph 10 of his Complaint, he alleges that "in its effort to sell the book *Killer Elite*, St. Martin's Press, LLC, and its joint venture partners[2], Getty Images, Inc. and Amazon.com, Inc. have appropriated Mr. Curran's image, likeness, and photograph without his consent to aid in selling and marketing the subject book." The Complaint alleges a cause of action arising under the right of publicity (Count One) and invasion of right of privacy (Count Two).

For the reasons elaborated below, St. Martin's Press is moving to dismiss the case on the ground that the Complaint fails to state a cause of action for either invasion of the right of publicity or invasion of the right of privacy.

## II. INVASION OF THE RIGHT OF PUBLICITY

Count One of the Complaint is for "Invasion of Right of Publicity". The gravamen of this section as it applies to St. Martin's Press, LLC is that the photograph of Mr. Curran was used without his consent for the promotion of the book, *Killer Elite*. In West Virginia, the right of publicity is limited to "the unjust enrichment caused by an unauthorized exploitation of the good will and reputation that *a public figure develops in his name or likeness*

---

[1] Curran makes no claim that he owns the copyright to the picture utilized on the cover of *Killer Elite*. Curran's Complaint does not identify where the picture was taken, under what circumstances the picture was taken and who the photographer was.

[2] St. Martin's Press denies that it was engaged in any joint venture with either Amazon or Getty, but that issue is of no relevance to this motion.

{C1212532.1}     2

*through the investment of time, money and effort.*" *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 370 S.E.2d 70, 86 (1983) (emphasis added); *see also Bi-Rite Enterprises, Inc. v. Button Master*, 555 F.Supp 1188, 1198 (S.D. N.Y. 1983) (same); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983) (stating that the "right of publicity has developed to protect the commercial interest of celebrities in their identities"); *House v. Sports Films & Talanst, Inc.*, 351 N.W.2d 684, 685 (Minn. App. 1984) (stating that the right of publicity "has not been extended beyond the protection of celebrities"). There is no allegation in the Complaint that Curran is a public figure or has invested his time, money, or effort to create a public image that is now being exploited by St. Martin's Press, LLC. Nor is St. Martin's use of Curran's image on the jacket of this book an appropriation of any endorsement value in Curran's image.

Having failed to plead the elements necessary to state a cause of action for invasion of the right of publicity, Count One of Curran's Complaint should be dismissed.

### III. <u>INVASION OF THE RIGHT OF PRIVACY</u>

Count Two alleges "Invasion of Right of Privacy". The West Virginia Supreme Court in *Crump*, following the Restatement (Second) of Torts, identifies four separate causes of action that fall within the rubric of invasion of privacy. They are (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.

While the Complaint parrots three of these four cause of action, intrusion, appropriation, and false light, two of the three (intrusion and false light) are plainly inapplicable.

A cause of action for invasion of privacy by intrusion upon seclusion refers to a "physical intrusion ... as when the defendant forces his way into the plaintiff's room in a hotel" or when the defendant uses binoculars to look into the plaintiff's window, taps the plaintiff's phone or opens his private mail. *Restatement (Second) of Torts* § 652B (1977). Obviously nothing of the sort is being alleged here. The Complaint is totally silent on the issue of how a picture taken of a soldier in a combat zone constitutes an intrusion upon Curran's seclusion. Indeed, in *Pierson v. Newsgroup Publications, Inc.*, 549 F. Supp. 635 (S.D. Ga. 1982), a soldier brought suit against the publisher of pictures graphically depicting the soldier's prisoner-of-war training and alleging invasion of privacy. The court held that the publisher was not liable to the soldier for invasion of privacy on the theory of intrusion into the soldier's solitude or private affairs, holding that "an essential element of this tort (intrusion into plaintiff's solitude or private affairs) is a physical intrusion akin to a trespass." The court found that the plaintiff soldier could not reasonably expect privacy under these circumstances.

Similarly, the Complaint fails to allege false light invasion of privacy for the simple reason that Curran does not allege falsity, which is the gravamen of a false light claim. *Crump* at 87; *Pierson* at 642; *Restatement (Second) of Torts* § 652E.[3]

Curran's claim in this case is, if anything, a claim for invasion of privacy for appropriation of likeness. However, the Complaint also fails to state a claim for appropriation.

---

[3] Even were there an allegation of falsity, the false light claim would fail for two additional reasons. *Crump*, citing *Restatement (Second) of Torts* § 652E, provides that a false light of invasion of privacy occurs only if "the false light in which the other was placed would be highly offensive to a reasonable person." *Crump* at p. 88. No explanation is set forth in the Complaint as to why the use of Mr. Curran's picture on the cover of *Killer Elite* would be highly offensive to a reasonable person. Additionally, as explained more fully on page 6 below, because *Killer Elite* addresses a matter of legitimate public interest, in order to have a viable false light claim, Curran would not only have to allege falsity, but that St. Martin's Press acted with "actual malice" or "abuse of privilege" in relation to that falsity, none of which is alleged.

Curran's misappropriation claim is on all fours with the plaintiff's claim in *Crump* and must be dismissed for the same reasons that the claim in *Crump* was dismissed. In *Crump*, the plaintiff's photo was used to illustrate a newspaper article about the discrimination and harassment problems faced by women coal miners. It was undisputed that the plaintiff in that case had suffered no such discrimination or harassment. Her image had been used merely because it was an available image of a female coal miner.

The Supreme Court dismissed Crump's appropriation claim "as a matter of law", holding:

> In order for a communication to constitute an appropriation, mere publication of a person's name or likeness is not enough, the defendant must take for his own use or benefit the reputation, prestige or commercial standing, public interest or other value associated with the name or likeness published. In the present case, Crump's photograph was not published because it was *her* likeness; it was published because it was the likeness of a *woman coal miner*. It was merely a file photograph used as a matter of convenience to illustrate an article on women coal miners. This type of incidental use is not enough to make the publication of a person's photograph an appropriation. Therefore, Crump was not entitled to recover under the appropriation theory of recovery as a matter of law.

*Crump* at 70. The same reasoning applies here. There is no allegation that Curran's image was used on the book jacket because it was *his* likeness, to take advantage of any value associated with Curran's image. It was simply a photograph of a soldier used to illustrate a book about special forces.[4]

The *Crump* Court added:

---

[4] See *Pierson* at 642 (plaintiff "has failed to show what value is attributable to his name and likeness.").

> No one has the right to object merely because his name or appearance is brought before the public, since neither is any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded

*Restatement (Second) of Torts* § 652C cmt. d quoted by *Crump* at p. 86. The same principle applies here.

Although it should not be necessary to even reach this question, the Court in *Crump* also held that no cause of action lies for **any** form of invasion of privacy if the communication at issue is privileged because it pertains to "matters of legitimate public interest." *Crump* at 85. "In determining whether a matter of legitimate public interest is involved, the inquiry 'focuses on the information disclosed by the publication and asks whether truthful information of legitimate concern to the public is publicized in a manner that is not highly offensive to a reasonable person.'" *Crump* at 83, quoting *Campbell v. Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980). The subject matter of this book, the operations of the United States special forces, is as a matter of law, a matter of legitimate public interest[5] and there is no allegation in the Complaint that it was presented in a manner that is highly offensive to a reasonable person. The privilege can, under *Crump* at 84, be divested by abuse or actual malice, but the Complaint contains no such allegation.

## IV. CONCLUSION

---

[5] Matters of legitimate public interest, also know as newsworthiness, cover a broad range of topics including: soldiers on active duty photographed while capturing prisoners *Four Navy Seals v. Associated Press*, 413 F.Supp.2d 1136, 1146 (S.D. Cal. 2005); nonconsensual publication of a photograph of an inmate and the author of a book (also an inmate) in prison in a magazine running a story on the book *Williams v. Newsweek, Inc.*, 63 F.Supp.2d 734, 736-737 (E.D. Va. 1999).

The thrust of Mr. Curran's complaint with regard to St. Martin's Press is the lack of compensation for the use of his picture on the cover of *Killer Elite*. If Mr. Curran's action is upheld, no historical, non-fiction work, such as *Killer Elite*, could utilize the picture of any service person or other figure without first obtaining consent and paying for the use of that picture. This is simply not, and never has been, the law of the State of West Virginia or of the United States of America. The claims of Mr. Curran against St. Martin's Press, LLC should be dismissed as failing to state a claim upon which relief can be granted.

WHEREFORE, St. Martin's Press, LLC respectfully requests that its Motion to Dismiss be granted and that it be awarded its attorney's fees and costs for this vexatious, wanton and oppressive assertion of a claim against St. Martin's Press, LLC. See, *The Daily Gazette Company v. Canady, Judge*, 322 S.E.2d 262 (W.Va. 1985), and *Preiser v. McQueen*, 352 S.E.2d 22 (W.Va. 1985).

Respectfully submitted,

ST. MARTIN'S PRESS, LLC

By Counsel

s/David Allen Barnette
DAVID ALLEN BARNETTE (WVSB 242)
W. SCOTT EVANS (WVSB 5850)
JACKSON KELLY PLLLC
P. O. Box 553
Charleston, WV 25322
(304) 340-1327

{C1212532.1}                                7