IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**ERIC CURRAN,**

    **Plaintiff**

v.

**AMAZON.COM, INC., a Delaware corporation; GETTY IMAGES, INC., a Delaware corporation; ST. MARTIN'S PRESS, LLC, SIDESHOW INC., d/b/a SIDESHOW COLLECTIBLES, a Delaware corporation; HOT TOYS, LTD., a business entity incorporated in Hong Kong; and CAFEPRESS.COM, INC., a Delaware corporation,**

CIVIL ACTION NO. 2:07-0354

    **Defendants.**

## CAFEPRESS.COM, INC.'S REPLY TO RESPONSE TO MOTION TO DISMISS

CafePress.com, Inc. ("CafePress"), by and through undersigned counsel, hereby replies to Plaintiff Eric Curran's ("Plaintiff") Response to Defendant CafePress, Inc.'s Motion to Dismiss ("Response").

### I. SUMMARY OF REPLY

Plaintiff cites unrelated (and unalleged) facts to support irrelevant arguments in response to CafePress's Motion to Dismiss ("Motion"). Indeed, whether or not West Virginia recognizes a claim for right of publicity is unimportant if that claim is preempted by the Communications Decency Act ("CDA"). Plaintiff's only relevant arguments appear to be first, that CafePress's assertion of the immunity granted by Section 230 of the Communications Decency Act is not the proper subject of a Rule 12(b)(6) motion because it is an affirmative defense; and second, that CafePress does not qualify for the immunity because it is in a "joint venture" with its user.

As explained more fully below, both of these arguments fail. A court is permitted to dismiss a complaint because of a meritorious affirmative defense, and indeed courts, including courts in this circuit, have done so under Rule 12 based on the broad scope of immunity afforded interactive computer services by Section 230 of the CDA. Moreover, Plaintiff's new assertion that CafePress is liable for negligence as a joint venturer fails because negligence claims are preempted by the CDA and the concept of a "joint venture" is irrelevant under Section 230 -- the only issue is whether the interactive computer service created the content itself. Since CafePress does not create or develop the allegedly unauthorized photograph at issue in this case, it qualifies for the CDA immunity and is therefore immune from Plaintiff's alleged claims of invasion of the rights of privacy and publicity, in addition to any potential claim of negligence. Hence, CafePress's Motion should be granted and Plaintiff's Complaint dismissed with prejudice.

## II. ARGUMENT

### A. CafePress's Motion Can Be Properly Decided Under Rule 12(b)(6)

Plaintiff argues that CafePress's Motion should be denied because the Communications Decency Act ("CDA") "is not an appropriate bases [sic] for 12(b)(6) motion because it is an affirmation [sic] defense," and states that "[n]o allegation has been made by CafePress that Plaintiff has failed to allege a necessary element for the recognized claims." Response at p. 2. Even if Plaintiff has alleged all of the necessary elements of his claims (which, with respect to his right of publicity claim, he has not), CafePress is still entitled to dismissal if the allegations fail to state a claim against it because of a meritorious affirmative defense -- namely, that CafePress is immune from suit for the alleged activities under the CDA.

> Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.

*Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996); *see also Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (dismissing claims based on affirmative defense of qualified immunity and finding that "[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim."); *Morales v. Robinson*, CV No. 2:05-0509, 2007 WL 1074836 (S.D.W. Va. 2007) (dismissing claim based on affirmative defense of statute of limitations).

Indeed, while Plaintiff relies on inapposite case law from other circuits, many courts, including courts in the Fourth Circuit, have dismissed complaints on motions to dismiss pursuant to Rule 12(b)(6) based on the broad immunity granted to providers of interactive computer services under Section 230 of the CDA. *See, e.g., Beyond Systems, Inc. v. Keynetics, Inc*, 422 F. Supp. 2d 523, 536-37 (D. Md. 2006) (granting one ISPs motion to dismiss because it was "clear that all the requisites for the application of the immunity provisions of the CDA are in place."). The court in *Beyond Systems* rejected plaintiff's request for discovery because it would "be an exercise in futility--a fishing expedition and a deep sea fishing expedition at that. If [plaintiff] were permitted to go forth with discovery in the present case, ISPs would have to undertake the defense of lawsuits in every state that has anti-spam legislation." *Id*; *see also Universal Communication Systems, Inc. v. Lycos*, 478 F. 3d 413, 419 (1st Cir. 2007) (affirming the district court's dismissal of claims against defendant for failure to state a claim because its activities fell squarely within those that Congress intended to immunize); *Doe v. Bates,* 35 Media L. Rep. 1435, 2006 WL 3813758 at *8-10 (E.D. Tex. 2006) (finding that a Rule 12(b)(6) motion is a procedurally proper method for determining the applicability of an affirmative defense provided by Section 230 and dismissing plaintiff's complaint); *PatentWizard, Inc. v. Kinko's Inc.*, 163 F. Supp. 2d 1069 (D.S.D. 2001) (granting motion to dismiss pursuant to Rule 12(b)(6) based on the CDA); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833-35 (2002) (dismissing claim on demurrer

3

against eBay for, among others, negligence based on federal immunity granted by Section 230 of the CDA).

Plaintiff's reliance on *Doctor's Associates, Inc. v. QIP Holders, LLC*, 82 U.S.P.Q.2d 1603 (D. Conn. 2007) is misplaced. In that case, defendant QIP Holdings, Inc. ("Quiznos") asserted Section 230 as an affirmative defense against claims for false advertising based on a Quiznos commercial posted on a website created by Quiznos. Since it was unclear from the allegations in the Complaint whether Quiznos created or developed the allegedly infringing commercial at issue, the court in that case held that it could not decide "at this stage of the proceeding" whether the defendant was entitled to immunity. Here, as explained in Section II.B below, there is no allegation that CafePress created or developed the allegedly infringing photograph on t-shirts offered for sale over the Internet by "Big Booper Tees" (Response Ex. 1) and hence, CafePress cannot be an information content provider under the Act.

Moreover, *Doctor's Associates* relies on two cases, neither of them from this circuit, *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), and *Novak v. Overture Svcs., Inc.*, 309 F. Supp. 2d 446, 452-53 (E.D.N.Y. 2004), both of which ultimately considered the CDA immunity defense advanced by defendants on the merits and *dismissed* plaintiffs' claims accordingly under Rule 12. Hence, this court may properly determine whether Plaintiff's complaint states a cause of action in light of the CDA immunity defense on a Rule 12(b)(6) motion to dismiss.

**B.     Plaintiff's Argument That CafePress Is In A Joint Venture With Its Shopkeeper Is Both Inaccurate And Irrelevant Because CafePress Is Clearly Not An Information Content Provider Within The Meaning Of The CDA**

Plaintiff also makes the irrelevant argument that CafePress is "in a joint venture with an intentionally undisclosed party for the predominately commercial purpose to manufacture and

sell t-shirts and potentially other items with Mr. Curran's image,"[1] and argues that "the negligence of one participant in a joint enterprise is imputed to all participants." Response at pp. 9-10.

As stated in CafePress's Motion, regardless of whether CafePress would be liable for negligence under West Virginia state law, the CDA grants broad immunity for a variety of claims, including negligence. *See, e.g., Doe v. Am. Online, Inc.*, 783 So. 2d 1010 (Fla. 2001) (finding that Florida law cause of action against ISP based in negligence was preempted by the CDA); *Doe One v. Oliver*, 755 A.2d 1000, 1003-04 (Conn. Supp. 2000) (barring claims against America Online for negligence based on federal immunity granted by the CDA); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 833-35 (2002) (barring claims against eBay for, among others, negligence based on federal immunity granted by Section 230 of the CDA); *see also Green v. America Online*, 318 F.3d 465 (3d Cir. 2003) (holding that Section 230 barred a tort action against AOL for its failure to remove allegedly defamatory material from its network); *Ben Ezra, Weinstein & Co., Inc. v. Am. Online, Inc.*, 206 F.3d 980 (10th Cir. 2000) (holding that § 230 proscribed a defamation claim against AOL based on material created by a third party), *cert. denied*, 531 U.S. 824 (2000); *Dimeo v. Max*, 433 F. Supp. 2d 523, 528 (E.D. Pa. 2006) (holding that because of the preemption clause in § 230(e)(3) of the CDA § 230(c)(1) of the CDA overrides the traditional treatment of publishers under statutory and common defamation law); *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536-37 (D. Md. 2006) (citing

---

[1] Plaintiff's contention that CafePress "refused to disclose who its joint venture partner is in selling Erik Curran t-shirts" (Response at p. 3 n.1) is false, as is plain from the text of Exhibit 2 attached to Plaintiff's Response. CafePress merely asked that Plaintiff proceed with its inquiry through formal discovery procedures (Response, Exh. 2) out of respect for user privacy laws and in recognition that courts typically do not compel the disclosure of the identity of a pseudonymous Internet actor except upon a showing that the plaintiff in fact has a credible claim. *See, e.g., McMann v. Doe*, 460 F. Supp. 2d 259, 266 (D. Mass. 2006) (refusing to grant leave to subpoena companies that had identifying information of defendant who allegedly defamed plaintiff); *Solers, Inc. v. Doe*, 35 Media L. Rep. 1297 (D.C. Sup. 2006) ("Because Solers claim could not withstand a motion to dismiss standard, its need for Doe's identity is not outweighed by SILA's interest in keeping that identity private.").

cases and noting that "courts have extended the reach of the CDA to immunize ISPs from liability in several settings besides defamation suits."); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117 (W.D. Wash. 2004) (holding that the CDA preempts state consumer protection law).

Also included within the broad scope of CDA immunity are Plaintiff's alleged claims of invasion of privacy and misappropriation of the right of publicity. *See* Motion at pp. 5-6 (*citing Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (granting immunity for invasion of privacy claim); *Perfect 10, Inc. v. CCBill LLC*, -- F.3d --, 2007 WL 1557475 at *11-12 & n.5 (ruling that CDA preempts claims for invasion of the right of publicity); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006) (granting immunity for invasion of privacy claim). Notably, Plaintiff could not distinguish *Perfect 10* and did not even bother trying to address *Carafano* and *Parker* in its Response.[2]

The CDA does not, however, immunize those directly responsible for online misconduct. It merely exempts interactive computer services (and users) for "information provided by another content provider." 47 U.S.C. § 230(c)(1). "[T]he original culpable party" remains liable. *Zeran v. America Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998).

Whether a party acts alone or as a joint venturer is irrelevant. The relevant inquiry under Section 230 is whether Plaintiff has alleged that CafePress is an information content provider

---

[2] Plaintiff asserts incorrectly in a footnote that "[a]ll of the cases in CafePress' memorandum deal with defamation and not with misappropriation of likeness," and makes the unsupportable conclusory statement, that "it is arguable" that the recently decided *Perfect 10* case "does not preempt right of publicity claims." This is simply not true. In fact, the *Carafano* and *Parker* cases cited in CafePress' memorandum and above both specifically hold that the CDA preempted claims for invasion of privacy and *Perfect 10* specifically holds that plaintiff's right of publicity claim was preempted under the CDA. *See Perfect 10*, 2007 WL 1557475 at *11 n.5 (acknowledging that while a right of publicity claim could be characterized as intellectual property, "inclusion of rights protected by state law within the 'intellectual property' exemption would fatally undermine the broad grant of immunity provided by the CDA" and therefore holding such claims to be preempted). Indeed, on motion for reconsideration, the Ninth Circuit re-issued *Perfect 10*, which previously had been published as *Perfect 10, Inc. v. ccBill, Inc.*, 481 F.3d 781 (9th Cir. 2007), expressly to consider this point and reaffirm more strongly that right of publicity claims are preempted by Section 230.

6

under the CDA. An *information content provider* is defined as "any person or entity that is responsible, in whole or part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Plainly, based on the allegations of the complaint and the Terms of Service and other documents found on the CafePress.com website, it is apparent that CafePress does not create or develop the content submitted to it by users.[3]

The CDA immunizes distributors as well as publishers. *See, e.g., Barrett v Fonorow*, 343 Ill. App. 3d 1184, 1196 (2003) (immunizing a publisher from a claim of invasion of privacy). Indeed, given the scope of the statute, even a party that edits or otherwise modifies third party content or earns a profit by its dissemination is deemed to be immune under the statute and not an information content provider. *See, e.g., Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir.) ("By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect."), *cert. denied,* 531 U.S. 824 (2000); *Blumenthal v. Drudge,* 992 F. Supp. 44, 50 (D.D.C. 1998) (holding editorial discretion an insufficient basis for conferring liability and finding that America Online's payments to Drudge did not change the fact that America Online was not an information content provider); *Schneider v. Amazon.com, Inc.,* 108 Wash. App.. 454, 465-66 (Wash. Ct. App. 2001) (rejecting the argument that Amazon.com was not exempt from liability under the CDA because it had the right to edit and affirmatively claimed valuable licensing rights in third party content); *Gentry v. eBay, Inc.,* 99 Cal. App. 4th 816 (Cal. App. 2002) (holding that eBay's practice of

---

[3] As stated in CafePress' Motion, the Court may consider the contents of CafePress' website when deciding a motion to dismiss. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) ("We note that . . . a court may consider [a Dow Jones article] in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity."); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (considering contents of a website on a motion to dismiss under the incorporation by reference doctrine). Indeed, Plaintiff himself has attached exhibits consisting of contents of CafePress's website to his Response.

actively soliciting and then compiling user comments (and ranking sellers with stars or the "Power Seller" designation) did not mean that eBay was acting as an information content provider).

In *Blumenthal v. Drudge*, for example, the plaintiff alleged that America Online could be held liable for conservative Internet blogger Matt Drudge's publication on his America Online site of the allegation that Clinton Administration White House Advisor Sidney Blumenthal had a history of beating his wife. Blumenthal, like plaintiff here, alleged that America Online should be held liable because it paid Drudge $3,000 per month to disseminate the Drudge Report and therefore was not a mere republisher of third party content. In addition, America Online touted the report in press releases intended to increase its subscriber base. America Online also had the right to edit Drudge's content. Notwithstanding these facts, the Court found that America Online was exempt from liability. *Drudge*, 992 F. Supp. at 50.

Plaintiff cites to evidence that CafePress is "dictating the price of the t-shirt, printing the t-shirt, taking orders for the t-shirt, and partaking in profits from the sale of every t-shirt sold which bears Mr. Curran's image." Response at p. 11. None of these allegations make CafePress an information content provider within the meaning of the CDA, nor can Plaintiff amend his complaint to state that CafePress created or developed the allegedly infringing material posted by "Big Booper Tees."[4]

Hence, CafePress qualifies for the broad federal immunity granted by Section 230 of the CDA, and Plaintiff's complaint against CafePress should be dismissed with prejudice.

---

[4] Like an ISP, CafePress provides the tools and means for shopkeepers to create and post content, including the photograph at issue in this case. It is shopkeepers, however, not CafePress, that post the material that CafePress republishes. *See, e.g., Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1118 (W.D. Wash. 2004) (no liability where images on Amazon.com had been provided by a shopkeeper).

### III. CONCLUSION

Because Plaintiff's claims are preempted by the CDA, and because there are no facts by which Plaintiff could prevail on his alleged claims for invasion of the rights of privacy and publicity, Plaintiff's complaint against CafePress should be dismissed with prejudice.

Dated: July 3, 2007

Respectfully Submitted,

CAFEPRESS.COM, INC.

By:   THE TINNEY LAW FIRM, PLLC


 /s/ John H. Tinney
John H. Tinney (WV Bar # 3766)
707 Virginia Street, East
Chase Tower, 14th Floor
Charleston, WV, 25301
Tel: (304) 720-3310
Fax: (304) 720-3315

-and-

GREENBERG TRAURIG LLP
Ian C. Ballon (pro hac vice pending)
Wendy M. Mantell
        (pro hac vice pending)
2450 Colorado Avenue, Suite 400E
Santa Monica, CA  90404
Tel: (310) 586-7700
Fax: (310) 586-7800

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ERIK CURRAN,

       Plaintiff,

v.                                  CIVIL ACTION NO.: 2:07-0354

AMAZON.COM, INC., a
Delaware corporation; GETTY
IMAGES, INC., a Delaware
corporation; ST. MARTIN'S
PRESS, LLC, SIDESHOW INC.,
d/b/a SIDESHOW COLLECTIBLES,
a Delaware corporation; HOT TOYS
LTD., a business entity incorporated
in Hong Kong; AND CAFEPRESS.COM,
INC., a Delaware corporation,

       Defendants.

## CERTIFICATE OF SERVICE

I, John H. Tinney, hereby certify that on the 2nd day of July, 2007, the foregoing **"CafePress.Com, Inc.'s Reply to Response to Dismiss"** was electronically filed with the Clerk of the Court and served electronically upon:

      Marvin W. Masters, Esquire
      Charles M. Love, IV, Esquire
      The Masters Law Firm
      181 Summers Street
      Charleston, WV 25301
         *Counsel for Plaintiff*

David A. Barnette, Esquire
W. Scott Evans, Esquire
Jackson Kelly PLLC
P. O. Box 553
Charleston, WV 25322
  *Counsel for Amazon.Com, Inc. and
  St. Martin's Press, LLC*

Andrew B. Cooke, Esquire
Elizabeth L. Taylor, Esquire
Flaherty Sensabaugh & Bonasso
P. O. Box 3843
Charleston, WV 25338-3843

Stephen M. Rummage, Esquire
Davis Wright Tremaine LLP
1201 third Avenue, Suite 2200
Seattle, WA 98101
  *Counsel for Getty Images, Inc.*

    /s/ John H. Tinney
John H. Tinney (WV State Bar #3766)