# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

**ERIK CURRAN,**
    **Plaintiff,**

v.

**CIVIL ACTION NO.:  2:07-0354**
**(Judge John T. Copenhaver)**

**AMAZON.COM, INC., a Delaware**
**corporation; GETTY IMAGES, INC.,**
**a Delaware corporation; ST. MARTIN'S**
**PRESS, LLC, SIDESHOW INC., d/b/a**
**SIDESHOW COLLECTIBLES, a**
**Delaware corporation; HOT TOYS LTD.,**
**a business entity incorporated in Hong**
**Kong; and CAFÉ PRESS.COM, INC., a**
**Delaware corporation,**
    **Defendants.**

## REPLY OF ST. MARTIN'S PRESS, LLC
## TO CURRAN'S RESPONSE TO MOTION TO DISMISS

COMES NOW the defendant, St. Martin's Press, LLC ("St. Martin's Press"), and

files this reply to the plaintiff's response to St. Martin's Press' Motion to Dismiss in the above-

styled matter.  As will be argued below, the plaintiff's Complaint fails to state a claim for

"invasion of right to publicity" or any invasion of privacy claim as alleged in his Complaint.

## I.    THE CORRECT STANDARD OF REVIEW

Plaintiff's response to St. Martin's Press' Motion to Dismiss presupposes that so long as

West Virginia recognizes claims for invasion of the rights of publicity and privacy and plaintiff

mentions those causes of action in his complaint, that is sufficient to defeat a Rule 12(b)(6)

motion to dismiss. (*See* Pl. Brief, p. 6).  That, of course, is not the correct standard of review.  As

the Supreme Court recently emphasized in *Bell Atlantic Corporation v. Twombly*:

> While a complaint attacked by a Rule 12(b)(6) Motion to Dismiss
> does not need detailed factual allegations, **a plaintiff's obligation**
> **to  provide  the  "grounds"  of  his  "entitle[ment]  to  relief"**

{C1219775.1}

> **requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do.** Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

\_\_\_\_ U.S. \_\_\_\_\_, 127 S.Ct. 1955, 1964-1965 (2007) (citations omitted, emphasis added). Conclusory allegations that do no more than parrot the law -- such as those made by plaintiff here -- cannot defeat a proper motion to dismiss. *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (explaining that the court "need not accept plaintiff's 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations'" (internal citations omitted)).

Accordingly, courts have not hesitated to dismiss claims akin to those asserted against St. Martin's Press where plaintiffs' allegations are insufficient to support those claims as a matter of law. *See, e.g., Williams v. Newsweek, Inc.*, 63 F.Supp.2d 734, 736 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999) (dismissing privacy based misappropriation claim stemming from use of plaintiff's photo in conjunction with book excerpt); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890 (9th Cir. 1988) (dismissing misappropriation claim arising out of use of plaintiff's photo in magazine); *Dallesandro v. Henry Holt & Co., Inc.*, 4 A.D.2d 470 (N.Y. App. Div. 1st Dept. 1957) (dismissing invasion of privacy claim based on use of plaintiff's photo on book jacket); *Murray v. New York Magazine Co.*, 27 N.Y.2d 406 (N.Y. 1971) (dismissing privacy claim based on use of plaintiff's picture on magazine cover); *Oma v. Hillman Periodicals, Inc.*, 281 A.D. 240, 244 (N.Y. App. Div. 1st Dept. 1953) (reversing denial of motion to dismiss invasion of privacy claim stemming from use of plaintiff's photo on magazine cover).[1]

---

[1] Given that plaintiff's case with respect to St. Martin's Press rests solely on plaintiff's appearance on the cover of *Killer Elite*, which plaintiff attached to his papers in response to the instant Motion, the court may properly consider that cover pursuant to the incorporation by reference doctrine in ruling on St. Martin's Motion to Dismiss. *See Phillips v. LCI Intern., Inc.*, 190 F.3d 609 (4th Cir. 1999) ("[A] court may consider [a Dow Jones article] in

## II.    **ARGUMENT**

As will be argued below, the defendant, St. Martin's Press, LLC, is entitled pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to be granted its motion to dismiss because the plaintiff's Complaint has failed to state a claim upon which relief can be granted. As the Court will note, the plaintiff's response to St. Martin's Motion to Dismiss largely ignores or otherwise incorrectly interprets the holdings of *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1984), which is the controlling authority in this matter. In fact, to the extent that the plaintiff's response fails to substantively address the issues raised by St. Martin's in its Motion, it is fair to conclude that plaintiff concedes that St. Martin's is entitled to dismissal of such claims.

### A.    **PUBLICITY AND APPROPRIATION**

Plaintiff's entire argument in response to St. Martin's motion to dismiss his right of publicity claim is to assert that he is a "public figure". This argument completely misses the mark. Plaintiff's complaint fails to state a claim for invasion of the right of publicity under West Virginia law even if one assumes, for the sake of argument, that he is a "public figure".[2]

The Supreme Court in *Crump v. Beckley Newspapers, Inc.* expressly stated that a right of publicity claim is intended to remedy "the unjust enrichment caused by the unauthorized exploitation of the goodwill and reputation that a public figure develops in his name or likeness through the investment of time, money and effort." 320 S.E.2d at 86 n. 6.  The Court went on to cite a string of cases involving celebrities and the unauthorized use of their images and personas, which include *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831 (6th Cir. 1983)

---

determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity."); *Williams v. Newsweek, Inc.*, 63 F. Supp.2d 734, 736 (E.D. Va. 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999) (explaining "the Court may consider the magazine article and photograph in question" in assessing motion to dismiss given that plaintiff did not dispute their authenticity).
[2]  Plaintiff offers no argument in support of his claim for invasion of right of privacy by appropriation of likeness. Insofar as he intends his argument regarding his publicity claim to apply as well to his appropriation claim, it fails for the same reason.

(Sixth Circuit found that an advertisement for a portable toilet called "Here's Johnny" exploited entertainer Johnny Carson's slogan); *Cher v. Forum Intl., Ltd*, 692 F.2d 634 (9th Cir. 1982) (Cher sued an adult magazine on the grounds that her image as a major celebrity was degraded by suggesting that she would grant such a publication an exclusive interview); *Groucho Marx Prods., Inc. v. Day & Night Co.*, 689 F.2d 317 (2nd Cir. 1982) (assignees of Marx Brothers' rights of publicity brought action against producers of a musical play for interference of those rights).  The fact that these cases all involved actions related to celebrities and allegations of infringement of their right to control the use of their images and personas reinforces the *Crump* Court's description of the right of publicity as a right that "protects the *commercial value* of a name or likeness." *Crump*, 320 S.E.2d at 86 n. 6 (emphasis added).  Thus, under *Crump* an action involving a claim based upon the right to publicity involves the unauthorized use of a public figure's name or likeness that has been developed for a commercial value.

Plaintiff's claim thus fails under *Crump* because he has made no allegation that he has a commercially valuable image or that he has invested time, money and effort into developing a commercially valuable image.

The Supreme Court discussion in *Crump* regarding invasion of privacy by appropriation of image reaches the same conclusion:

> In order for a communication to constitute an appropriation, merely publication of a person's name or likeness is not enough, the defendant must take for his own use or benefit the reputation, prestige or commercial standing, public interest or other value associated with the name or likeness published.  In the present case, **Crump's photograph was not published because it was her likeness, it was published because it was the likeness of a woman coal miner.**  It was merely a final photo used as a matter of convenience to illustrate an article on women coal miners.  This type of incidental use is not enough to make the publication of a person's photograph an appropriation.

*Crump*, 320 S.E.2d at 86 (emphasis added).

As stated in defendant's Memorandum in Support of the Motion to Dismiss, the use of Curran's photo on *Killer Elite*, as alleged in the Complaint, was not because of any particular commercial value that Curran had developed in his own likeness. Rather, it was used as a generic picture of a soldier to illustrate a book about the deployment of U.S. military forces. This is precisely the type of "incidental use" the West Virginia Supreme Court has recognized as not constituting an actionable appropriation as a matter of law, whether based upon a right of privacy or right of publicity.[3]

Finally, the Court in *Crump* also stated:

> No one has the right to object merely because his name or appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. The fact that the defendant is engaging in the business of publication, for example of a newspaper, out of which it makes or seeks a profit is not enough to make the incidental publication a commercial use of the name or likeness. Thus, a newspaper, although it is not a philanthropic institution, does not become liable. . . to every person whose name or likeness it publishes.

*Crump*, 320 S.E.2d at 86.

The plaintiff is thus incorrect that all the law requires with respect to a right to publicity claim is that the image or persona of a "public figure" be used, without authorization, for profit. Rather, under *Crump*, it is the unauthorized use of an individual's "name or likeness that has developed a commercial value" through the individual's "investment of time, money and effort"

---

[3] Plaintiff cites two out-of-state cases in opposition to St. Martin's motion to dismiss, *Continental Optical Co. v. Reed*, 86 N.E. 2d 306 (Ind. 1949) and *Tellado v. Time Life Books, Inc.*, 643 F. Supp. 904 (D. N.J. 1986). He cites the cases for the proposition that soldiers are public figures, a proposition that, as noted above, is insufficient to support his claim. It is also worth noting that neither case involved use of an image on a book jacket. Rather, *Continental Optical* and *Tellado* both involved the use of photos of soldiers on advertising materials. *Tellado* concerned use of a photograph on a letter and other promotional materials soliciting purchases of a series of books and *Continental Optical* concerned use of the plaintiff's image as part of an advertisement for a company selling optical products.

that forms the basis for liability -- none of which were pled in the Complaint. Therefore, plaintiff's appropriation claims fail as a matter of law.

## B.    FALSE LIGHT AND INTRUSION

With respect to the other right of privacy claims asserted in the Complaint – false light and intrusion – plaintiff offers no counter to the deficiencies of those claims noted in St. Martin's Memorandum in Support of Its Motion to Dismiss other than to vaguely (and erroneously) say St. Martin's "does not state that the plaintiff has not stated claim but . . . asserts its own factual conclusions." Plaintiff does not cite any examples of the supposed "factual conclusions" asserted by St. Martin's. That is not surprising as none were made. Rather St. Martin's did precisely what plaintiff says was not done, state that plaintiff has failed to allege facts necessary to support these claims since the Complaint contains no allegation of falsity (a prerequisite to a false light claim) and no factual allegations demonstrating intrusion upon seclusion (a prerequisite to an intrusion claim).

Tellingly, unlike plaintiff's approach to the right of publicity claim where plaintiff has offered to amend the Complaint to assert public figure status in the mistaken belief that doing so would bar that claim from dismissal, plaintiff makes no offer to amend the Complaint to fix the deficiencies in his false light and intrusion claims. Given that plaintiff has now acknowledged that the photo of him at issue was taken while plaintiff was deployed as a soldier in a combat zone (*see* Pl. Brief p.2), it is clear plaintiff has not offered to correct these deficiencies because he cannot. A picture of a soldier taken in a combat zone is not an intrusion upon seclusion, (*see, e.g., Pierson v. Newsgroup Publications, Inc.*, 549 F. Supp. 635 (S.D. Ga. 1982)), and as plaintiff is depicted on the cover of *Killer Elite* as exactly what he was when the photo was taken – a solider in a combat zone – there is nothing false to be alleged (let alone a falsity that "would be

highly offensive to a reasonable person.")   Accordingly, plaintiff's intrusion and false light claims must be dismissed.

### C.   NEWSWORTHINESS AND RIGHT TO PRIVACY

Plaintiff's privacy claims must also fail because the use of plaintiff's photo on the cover of *Killer Elite* is protected under West Virginia's newsworthiness privilege.  The Court in *Crump* explained that this privilege applies as a matter of law to two classes of newsworthy subjects, "public figures and matters of legitimate public interest." 320 S.E.2d at 83.  There is no question that *Killer Elite*, a non-fiction book about U.S. special operations activity since the abortive attempt to rescue Iranian hostages in 1980, addresses a matter of legitimate public interest.  Moreover, given plaintiff's assertion in his responsive papers that he is a "public figure," the newsworthiness privilege is applicable on that separate basis as well.

The sole argument offered by plaintiff to negate the applicability of this privilege, which immunizes St. Martin's Press from liability, is to declare that the cover of *Killer Elite* (as opposed to the book's interior) is an advertisement and assert that by virtue of saying so plaintiff has raised an issue of fact that cannot be resolved at this time.  Although as discussed more fully below, a book cover is not properly categorized as an advertisement devoid of editorial function, the distinction plaintiff struggles to make here is of no legal import in any event.  There is nothing in *Crump* indicating that the newsworthiness privilege does not apply to usages that may be deemed advertisements where those usages pertain to matters of legitimate public interest or concern public figures.

Indeed, case law that has specifically addressed this issue in analyzing the applicability of analogous privileges in other jurisdictions is to the contrary.  *See Lane v. Random House, Inc.,* 985 F. Supp. 141, 147 (D. D.C. 1995) (rejecting plaintiff's argument that newspaper

*advertisement* for book is entitled to lesser degree of protection than the book itself, holding "[w]hile the newsworthiness privilege may not apply to an advertisement for a non-speech product, it does apply to advertisements for speech products"); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1050-51 (2nd Cir. 1995) (upholding dismissal of appropriation and privacy claims stemming from use of plaintiff's photo in advertisement for book under New York's incidental use privilege, explaining it "is clear that what drives the 'incidental use' exception is the First Amendment interest in protecting the ability of news disseminators to publicize . . their own communications."); *see also Williams v Newsweek, Inc.*, 63 F. Supp 2d 734 (E.D. Va 1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999) (rejecting argument that use of plaintiff's photo in magazine article allegedly for "advertising purposes" to "boost sales" of book established liability for invasion of privacy claim); *Cher v Forum Intl., Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) ("Constitutional protection extends to the truthful use of a public figure's name and likeness in advertising which merely an adjunct of the protected publication and promotes only the protected publication.").[4]

Moreover, although it does not impact the privilege's application, plaintiff's characterization of the *Killer Elite* jacket as an advertisement which "does not illustrate the story" is on its face incorrect. While a book's jacket (just like its title, and most certainly its content) plays a role promoting sales of the book, it also serves an important editorial function, communicating the book's subject matter. That is plainly the case here, where the photo at issue

---

[4] Although the court need not decide constitutional issues here given the newsworthiness privilege articulated in *Crump*, the First Amendment would require the same protection described above if the West Virginia privilege did not already apply. Insofar as necessary, St. Martin's incorporates the First Amendment analysis of defendant Getty Images in its Motion to Dismiss. *See* Docket Nos. 25 and 26.

illustrates the matter of public interest addressed in the book, the deployment of U.S. armed forces.[5]

Plaintiff's attempts to distinguish *Crump* and the applicability of the newsworthiness privilege on the basis that the photo in *Crump* was "within the body of the story" as opposed to on a cover are unavailing. First, unlike books, newspapers do not have covers, so with respect to this point plaintiff is comparing apples and oranges. Second, nothing in the *Crump* decision suggests the court's analysis turned in any way on the placement of the photo in relation to the story. The Crump court characterized the photo simply as being published "in conjunction with the article," (*Crump*, 320 S.E.2d at 75), which is equally true of Curran's photo in relation to *Killer Elite*.

The fact that an individual's photograph appears on the cover of a book or magazine, rather than within the body of the story, does not abrogate its illustrative function or the protection afforded such use. *See, e.g., Dallesandro v. Henry Holt & Co., Inc.*, 4 A.D.2d 470 (N.Y. App. Div. 1st Dept 1957) (rejecting plaintiff's argument that a book jacket is an advertisement and, accordingly, dismissing invasion of privacy claim based on use of plaintiff's photo on that jacket); *Murray v. New York Magazine Co.*, 27 N.Y.2d 406 (N.Y. 1971) (dismissing privacy claim based on use of plaintiff's picture taken during St. Patrick's Day Parade on the cover of *New York Magazine* to illustrate interior article on Irish-Americans); *Oma v. Hillman Periodicals, Inc.*, 281 A.D. 240, 244 (N.Y. App. Div. 1st Dept 1953) (reversing denial of motion to dismiss boxer's invasion of privacy claim stemming from use of boxer's photo on cover of magazine to illustrate interior article on corruption in professional boxing); *see also*

---

[5] The minimal text appearing on the <u>back</u> cover for *Killer Elite* praising the author's prior book, takes nothing away from the illustrative editorial function of plaintiff's photograph appearing on the book's <u>front</u> cover. Additionally, given its placement, it is clear that the photograph at issue is being used to convey the subject matter of *Killer Elite*, not to drum up sales for *The Emperor's Code*.

*Klein v. McGraw-Hill, Inc.*, 263 F. Supp. 919, 921-922 (D. D.C. 1966) (dismissing privacy claim based on use of photo of plaintiff-inventor on frontispiece of textbook as photo was illustrative of subject, not an advertisement for the book).

Plaintiff's other efforts to distinguish *Crump* are equally inapposite. Plaintiff makes the implication that there is some legal significance to the fact that Curran is not named in *Killer Elite*. However, that implication is directly contradicted by the Court's dismissal of the appropriation claim in *Crump* because, in *Crump*, the plaintiff's photo was used in a generic manner to illustrate a story about women coal miners in which her name was nowhere mentioned. *See Crump*, 320 S.E.2d at 75, 86. Likewise, the fact that the plaintiff in *Crump* had given consent for the use of her photograph in a completely different context is totally irrelevant since consent was <u>not</u> given for the use challenged in *Crump* and, more to the point, the court's decision in *Crump* in no way relied on that prior consent. Finally, plaintiff does not provide any explanation as to why these alleged distinctions would have any substantive bearing on whether the use of plaintiff's photograph in conjunction with *Killer Elite* is privileged under the newsworthy exception, and in fact, they do not. The newsworthiness privilege articulated in *Crump* is on all fours with the use of the image at issue here, providing an additional basis for the dismissal of plaintiff's privacy claims.

## III.    **CONCLUSION**

As the Complaint herein fails to state a claim upon which relief can be granted, defendant St. Martin's Press is entitled to be granted its motion to dismiss.

ST. MARTIN'S PRESS, LLC

By Counsel

/s/ David Allen Barnette
DAVID ALLEN BARNETTE (WVSB 242)
W. SCOTT EVANS (WVSB 5850)
JACKSON KELLY PLLLC
P. O. Box 553
Charleston, WV 25322
(304) 340-1327

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**ERIK CURRAN,**
    **Plaintiff,**

v.

**AMAZON.COM, INC., a Delaware**
**corporation; GETTY IMAGES, INC.,**
**a Delaware corporation; ST. MARTIN'S**
**PRESS, LLC, SIDESHOW INC., d/b/a**
**SIDESHOW COLLECTIBLES, a**
**Delaware corporation; HOT TOYS LTD.,**
**a business entity incorporated in Hong**
**Kong; AND CAFÉ PRESS.COM, INC., a**
**Delaware corporation,**
    **Defendants.**

**CIVIL ACTION NO.: 2:07-0354**
**(Judge John T. Copenhaver)**

## CERTIFICATE OF SERVICE

I, David Allen Barnette, counsel for St. Martin's Press, LLC, do hereby certify that on July 3, 2007, the ***Reply of St. Martin's Press, LLC to Curran's Response to Motion to Dismiss*** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants shown below:

    Charles M. Love, IV, Esquire
    Marvin W. Masters, Esquire
    The Masters Law Firm
    181 Summers Street
    Charleston, WV 25301
    cml@themasterslawfirm.com

    Andrew B. Cook, Esquire
    Elizabeth L. Taylor, Esquire
    Flaherty Sensabaugh & Bonasso
    Post Office Box 3843
    Charleston, West Virginia25338-3843
    acooke@fsblaw.com
    etaylor@fsblaw.com

{C1219775.1}

John H. Tinney, Esquire
John H. Tinney, Jr., Esquire
The Tinney Law Firm, PLLC
Bank One Center, 14th Floor
7097 Virginia Street, East
Charleston, West Virginia 25301
johntinney@tinneylawfirm.com
jacktinney@tinneylawfirm.com

I hereby certify that I have mailed the *Reply of St. Martin's Press, LLC to Curran's Response to Motion to Dismiss* by First Class United States Mail to the following non-CM/ECF participants:

Ian C. Ballon, Esquire
Wendy M. Mantell, Esquire
Greenberg Traurig
Suite 400E
2450 Colorado Avenue
Santa Monica, California 90404

Stephen M. Rummage
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101

James K. Tinney, Esquire
The Tinney Law Firm, PLLC
P.O. Box 3752
Charleston, West Virginia 25337-3752

/s/David Allen Barnette
DAVID ALLEN BARNETTE