## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT CHARLESTON

**ERIK CURRAN,**

  **Plaintiff,**

v.           **CIVIL ACTION NO.: 2:07-0354**
              (Judge John T. Copenhaver)

**AMAZON.COM, INC., a**
**Delaware corporation;**
**GETTY IMAGES, INC.,**
**a Delaware corporation;**
**ST. MARTIN'S PRESS, LLC,**
**A New York corporation;**
**SIDESHOW INC., d/b/a SIDESHOW**
**COLLECTIBLES, a Delaware corporation;**
**HOT TOYS, LTD., a business entity**
**incorporated in Hong Kong; and**
**CAFE PRESS.COM, INC., a Delaware**
**corporation,**

  **Defendants.**

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT GETTY IMAGES, INC.'S MOTION TO DISMISS

Defendant Getty Images, Inc. ("Getty Images") submits this Reply in support of its Motion to Dismiss the Complaint of Plaintiff Erik Curran.

### I. INTRODUCTION

Plaintiff's Response rests on the premise that a plaintiff has the right to seek damages based on the use of a non-defamatory picture on the cover of a non-fiction book that addresses matters of public interest and concern. Because the law holds otherwise, Getty Images reiterates its request that Curran's Complaint be dismissed with prejudice, for two independent reasons.

*First,* for the reasons set forth in the Reply of Defendant St. Martin's Press, Curran has failed to state a claim upon which relief can be granted under West Virginia law.

1

***Second*,** Curran mistakenly assumes that the alleged sale of a photograph, published in a book that purportedly does not feature him, renders its use unprotected under the First Amendment. Rather, the newsworthy nature of *Killer Elite* entitles the use of the photo to the highest level of protection under the Constitution.

## II.  STANDARD ON THE MOTION

Curran first tries to avoid the merits of this motion, urging that Getty Images "waived" its right to move to dismiss his complaint because a party making a motion under Fed. R. Civ. P. 12(b)(6) "shall [do so] before pleading if a further pleading is permitted." Resp. at 1, 6 (citing Fed. R. Civ. P. 12(b)).  But Curran forgets that Rule 12(h)(2) specifically provides that "[a] defense of failure to state a claim upon which relief can be granted," i.e., the defense specified by Fed. R. Civ. P. 12(b)(6), "may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."  Here, Getty Images preserved the defense of a failure to state a claim by asserting it in its Answer (Docket No. 15), a pleading permitted under Rule 7(a), and it then properly moved to dismiss based on that ground – both as Rule 12(h) contemplate.

In any event, this amounts to nothing more than an academic debate.  Settled law establishes that it does not matter whether the Court treats Getty Images' motion as a motion to dismiss under Rule 12(b)(6) or a Rule 12(c) motion on the pleadings.[1]  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Indeed, the Fourth Circuit has held that the same standard governs both motions.  *Id.*

As to the standard, Curran acknowledges that the pleading rules "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[1] Getty Images styled its motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for the simple reason that the Court's June 7, 2007, Order and Notice (Docket No. 5) contemplated that motions under Rule 12(b) would be filed on or before June 27, 2007, as this motion was.

2

do." *See* Resp. at 6 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 2007 WL 1461066 (U.S. May 21, 2007)). Having stated that standard, however, Curran disregards its mandate, repeatedly declaring that his ability to recite each element of a recognized claim satisfies his burden at the pleading stage. *See* Resp. at 2, 7, 12. But a plaintiff's ability to allege facts entitling him to relief measures the sufficiency of his pleading. Here, even if Curran can prove every fact he alleges in the Complaint, he will not be entitled to recover. For that reason, as the Supreme Court put it in *Twombly*, he has not "nudged [his] claims across the line from the conceivable to plausible," and his "complaint must be dismissed." *Twombly,* 2007 WL 1461066, at *2; *see also Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (a court "need not accept plaintiff's 'unwarranted deductions, 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations'" (citations omitted)).

### III.  ARGUMENT

**A.    Getty Images Did Not Infringe Mr. Curran's Rights of Publicity or Privacy.**

Getty Images refers to and incorporates by reference the well-reasoned arguments of St. Martin's Press in its Reply that Curran has not stated a claim for infringement of his rights of publicity or privacy under West Virginia common law. Docket No. 29. Because Curran makes the same arguments in response to both parties' motions, St. Martin's reply, grounded in settled West Virginia law, applies equally to Getty Images.[2]

Accordingly, the Court should dismiss Plaintiff's claims against Getty Images based on his failure to plead a claim under West Virginia common law.

---

[2] Curran states that the image Getty Images provided St. Martin's Press "is the same photo appearing on the subject t-shirts and doll box." Resp. at 2. In his Complaint, however, Curran did not allege that Getty Images had any role in the uses of the image other than on the cover of *Killer Elite* or that it provided the image to any of the other defendants in this lawsuit. In fact, Curran could not make such allegations consistent with the obligations imposed by Fed. R. Civ. P. 11(b)(3).

### B.  The First Amendment Protects St. Martin's Use of Curran's Image on the Cover of *Killer Elite*.

Curran acknowledges that the First Amendment affords newsworthy subjects its highest level of protection.  Further, he tacitly admits that the United States armed forces' operations and activities constitute matters of public interest.[3]  Nevertheless, he claims that because St. Martin's sells its books for a profit, its use of Curran's image on the cover of a book that does not feature him amounts to a purely commercial use that has no First Amendment protection.  *See* Resp. at 2, 3, 9, 11.  Curran's assertion fundamentally misunderstands the scope of the constitutional protection, for even paid-for newsworthy speech merits full protection under the First Amendment, especially in the circumstances here.[4]

In the first place, a cover photo does not lose its illustrative character simply because it features an individual not mentioned in the relevant text.  *See, e.g., Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 408-09 (N.Y. 1971); *Dallesandro v. Henry Holt & Co., Inc.*, 4 A.D.2d 470, 471 (N.Y. App. 1957) (dismissing invasion of privacy claim where plaintiff was not featured in book and cover image was "an attempted pictorialization of the theme"); *Oma v. Hillman Periodicals, Inc.*, 281 A.D. 240, 244 (N.Y. App. 1953) (dismissing boxer's claim based on use of his photograph on magazine cover where featured story on corruption did not mention his name or use his image).  For example, in *Murray*, the defendant published a photo of the plaintiff in "typical[] Irish garb" at a St. Patrick's Day parade to illustrate a story about contemporary New York attitudes regarding Irish-Americans.  *Id.* at 409.  Although Murray, the plaintiff, was neither Irish-American nor featured in the story, the court dismissed his invasion of privacy claim, finding that he had no right to sue over the use of his image to illustrate a newsworthy issue.  *Id.* at 408-09.

---

[3] Curran acknowledges "the patriotic fervor created by the attacks on our country."  Resp. at 12.
[4] Curran's repeated citations to *Tellado v. Time Life Books, Inc.*, 643 F. Supp. 940 (D.N.J. 1986), have no bearing for the reasons stated in St. Martin's Reply.  Docket 29 at 5 n.3.

Here, the disputed image depicts Curran in special operations "garb"—bearded, sleeveless, armed, and wearing a backwards baseball cap—in an active combat zone. *See* Ex. A to Motion (excerpts from jacket of *Killer Elite*). Even if Curran may be neither a special operations agent nor featured in the book (just as the plaintiff in *Murray* was not Irish-American), his photo nonetheless reasonably relates to and illustrates its contents.[5]

Nor does the mere sale of a book deprive it of the protections accorded speech on matters of public interest, as Mr. Curran appears to argue. "[T]he free publication and dissemination of books and other forms of the printed word furnish very familiar applications of [First Amendment] protected freedoms. It is of course **no matter** that the dissemination takes place under commercial auspices." *Smith v. California,* 361 U.S. 147, 150 (1959) (emphasis added). *See also New York Times Co. v. Sullivan*, 376 U.S. 254, 266 (1964) (finding full First Amendment protections apply to newspaper despite required purchase); *ETW Corp. v. Jireh Publ'ng, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (prints featuring Tiger Woods commemorating his Masters Tournament victory merit full First Amendment protection, for "[s]peech is protected even though it is carried in a form that is sold for profit"). In the seminal case, *New York Times v. Sullivan*, the Supreme Court found that the First Amendment afforded full protection to an ***advertisement*** featuring editorial material on a matter of public concern. As in *Sullivan,* the fact that someone may have paid Getty Images for a license to use the image "is as immaterial … as is the fact that newspapers and books are sold." *Sullivan*, 376 U.S. at 266.

Indeed, even if the use of the image on the cover of *Killer Elite* did amount to an advertisement (which it does not), Resp. at 10, "speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748,

---

[5] The alleged facts that the author did not select the photo and that the back of the book—something normally not visible on book racks—features a small amount of promotional text do not alter this conclusion.

761 (1976). Instead, "[c]ourts normally afford full First Amendment protection to advertising promoting speech in books." Steven G. Brody and Bruce E. H. Johnson, *Advertising and Commercial Speech: A First Amendment Guide* at 2-29 (2d ed. 2006); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 152 (D.D.C. 1995) (First Amendment fully protected publisher's promotion of a book on conspiracy theories about President Kennedy's assassination, since "speech remains protected even if styled as a solicitation to purchase"); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal.3d 860, 873, 603 P.2d 454 (Cal. 1979) ("It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise."); *Lacoff v. Buena Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 190 (Sup. Ct. 2000) ("While [the statements on the cover of the book] have a commercial element—to entice readers to buy the Book—they also have artistic or content-related expression, which is entitled to full First Amendment protection."). Curran does not dispute that *Killer Elite* itself comprises newsworthy speech. Thus, even if St. Martin's had used his photo ***solely*** to promote that protected expression, that promotion would merit full First Amendment protection.

Finally, unable to articulate a credible vision of the First Amendment that would permit his claims, Curran resorts to distinguishing the abundant case law supporting Getty Images' position. In fact, however, his purported distinctions range from misguided to misleading. For example, contrary to Curran's claim, in *Klein v. McGraw Hill*, 263 F. Supp. 919, 920 (D.D.C. 1966), the plaintiff ***did not*** consent to the publication of his photo. *Cf.* Resp. at 11. Further, the plaintiffs in *Four Navy Seals v. Associated Press*, 413 F. Supp.2d 1136, 1143 (S.D. Cal. 2005), ***did not*** publish the subject photos themselves, as Curran argues, Resp. at 10, and the plaintiff in *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70, 75 (1984), ***did not*** consent to use of the subject photo. Resp. at 9. Similarly, the court in *Creel v. Crown Publishers, Inc.*, 115 A.D.2d 414, 415, 496 N.Y.S.2d 219 (N.Y. App. 1985), specifically discarded as irrelevant

6

the plaintiff's consent (or lack thereof) in finding the photos at issue newsworthy. Resp. at 12.

Finally, the court in *Rosemont Enter., Inc. v. Random House, Inc.*, 58 Misc.2d 1, 294 N.Y.S.2d 122 (N.Y. Sup. 1968), did not rest its holding on lack of standing, as Curran suggests. Resp. at 11. Rather, consistent with uniform law, the court found that "[a] public figure, whether he be such by choice or involuntarily, is subject to the often-searching beam of publicity and, in balance with the legitimate public interest, the law affords his privacy little protection." 58 Misc.2d 1 at 4. For that reason, Curran's peculiar assertion that he had achieved "public figure" status only further weakens his claims.

## IV.  CONCLUSION

For these reasons, Defendant Getty Images, Inc., requests this Court to grant its Motion to Dismiss the Complaint in its entirety. Because Mr. Curran cannot amend his Complaint to remedy its insufficiency under the First Amendment, the Court should deny his request for leave to amend the Complaint and order dismissal with prejudice.

**GETTY IMAGES, INC.**
**By Counsel**

/s/Andrew B. Cooke
Andrew B. Cooke (WV State Bar #6564)
Elizabeth L. Taylor (WV State Bar #10270)
FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C.
Post Office Box 3843
Charleston, WV 25338-3843
(304) 345-0200
(304) 345-0260 (facsimile)
*Counsel for Getty Images, Inc.*

*Of Counsel:*
Stephen M. Rummage
Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
(206) 757-8136
(206) 757-7136 (facsimile)
*Counsel for Getty Images, Inc.*

## **CERTIFICATE OF SERVICE**

I, Andrew B. Cooke, counsel for Getty Images, Inc, do hereby certify that on July 17, 2007, I presented the foregoing ***Reply Memorandum in Support of Defendant Getty Images' Inc.'s Motion to Dismiss*** to the Clerk of Court for filing and uploading to the CM/ECF system.

David Allen Barnette
W. Scott Evans
Jackson Kelly PLLLC
P. O. Box 553
Charleston, WV 25322
(304) 340-1327
dbarnette@jacksonkelly.com

Charles M. Love, IV
Marvin W. Masters
181 Summers Street
Charleston, WV 25301
cml@themasterslawfirm.com
mwm@themasterslawfirm.com

John H. Tinney
The Tinney Law Firm, PLLC
707 Virginia Street, East
P.O. Box 3752
Charleston, WV 25337-3752
johntinney@tinneylawfirm.com

Ian C. Ballon
Wendy M. Mantell
Greenberg Traurig LLP
2450 Colorado Ave., Suite 400E
Santa Monica, CA 90404

/s/Andrew B. Cooke
Andrew B. Cooke (WV State Bar #6564)
Elizabeth L. Taylor (WV State Bar #10270)
FLAHERTY, SENSABAUGH & BONASSO, P.L.L.C.
200 Capitol Street
P. O. Box 3843
Charleston, WV 25338-3843
(304) 345-0200 (Telephone)
(304) 345-0260 (Telecopier)
acooke@fsblaw.com (E-Mail)