UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


ERIK CURRAN,

      Plaintiff,

v.                                    Civil Action No. 2:07-0354

AMAZON.COM, INC.,
GETTY IMAGES, INC.,
ST. MARTIN'S PRESS, LLC,
SIDESHOW, INC., a California
corporation, HOT TOYS, LTD.,
and CAFÉPRESS.COM, INC.,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending are the motions to dismiss filed by the following defendants on the following dates: Amazon.com, Inc. ("Amazon"), on June 5, 2007; St. Martin's Press, LLC ("St. Martin"), on June 8, 2007; CaféPress.Com, Inc. ("CaféPress"), on June 8, 2007; and Getty Images, Inc. ("Getty"), on June 27, 2007.[1]

--------------------------------

      [1] CaféPress has also filed, on November 21, 2007, a motion to extend the discovery deadline.  It is ORDERED that the motion be, and it hereby is, denied as moot in view of the court's order entered on January 3, 2008, extending the existing case deadlines.  Nevertheless, the motion for a status conference, filed by CaféPress on January 15, 2008, suggests the extension of the deadlines may be insufficient as to it.  The motion for a status conference is denied without prejudice to the filing of a further motion outlining the need for additional time in light of the within opinion and order.

## I. Facts

According to plaintiff Erik Curran ("Curran") in his two-count amended complaint, defendants used plaintiff's likeness for their financial gain in the sale of their books, t-shirts, toys, and dolls without his consent and without providing him monetary compensation.  (Am. Compl. ¶¶ 10, 15-18; Resp. to Amaz. M.T.D. at 2).  Defendants have not disputed that plaintiff was in the West Virginia National Guard and that the image or likeness in question was taken while Curran was deployed in a combat zone. (Resp. to Amaz. M.T.D. at 2).

With respect to Getty, St. Martin, and Amazon ("the book defendants"), the amended complaint alleges Getty provided an unauthorized photograph of plaintiff to the publishing company, St. Martin, for use on the cover of the book, Killer Elite.  (Am. Compl. ¶¶ 9-10).  In April of 2007, it is alleged that Amazon, in a joint venture with Getty and St. Martin, began selling Killer Elite on its website.  (Id. ¶¶ 8, 10).

Curran has furnished a copy of the cover of Killer Elite.[2]  The book defendants do not dispute the authenticity of

_____

[2]  The cover copy is attached to Curran's responses to the book defendants' motions to dismiss.

2

the copy.  On the cover of the book, plaintiff's picture is directly underneath the title, KILLER ELITE, which is in all capital, large block letters.  (Book Jacket, attached as Ex. A to Resp. to M.T.D.).  The words, "KILLER ELITE," are significantly larger than the remainder of words on the cover.  (Id.).  Against a backdrop of helicopters, the plaintiff is bearded, sleeveless, wearing a baseball cap backwards, and holding a rifle.  (Id.).  To the right of his profile, in significantly smaller capital letters, is the subtitle, "THE INSIDE STORY OF AMERICA'S MOST SECRET SPECIAL OPERATIONS TEAM."  (Id.).  The name the author, Michael Smith, in capital letters similar to the size of the subtitle is to the left of his profile.  (Id.).  In the far right margin of the cover, in tinier print, is a description of the contents of the book.  (Id.).  It explains that Killer Elite is a non-fiction examination of United States special operations activity since the attempt in 1980 to rescue hostages from the American Embassy in Iran.  (Id.).  The book cover was designed by PTG.  (Resp. To Amaz. M.T.D. at 2).

         The back cover of the book advertises other books written by the author, Michael Smith, including Emperor's Codes.  (Resp. to Amaz. M.T.D. at 2; Amaz. Reply to Resp. to M.T.D. at

3).  Although the pages of <u>Killer Elite</u> contain photographs, none of them include Curran's image.  (Resp. To Amaz. M.T.D. at 2).

A non-book defendant, CaféPress, sells t-shirts which have Curran's image printed on them.[3]  (Am. Compl. ¶ 14).  The image of Curran on the t-shirts is the same as the one displayed on the cover of <u>Killer Elite</u>.  (CaféPress Web Printout, attached as Ex. 1-B to Resp. to M.T.D.'s).  There were three designs on CafePress's website featuring plaintiff's likeness.  (<u>Id.</u>).  The first includes Curran's image underneath the phrase: "Special Forces -- De Oppresso Liber," which in Spanish means liberate the oppressed.  (<u>Id.</u>).  In the second and third designs, plaintiff's image is paired with the saying: "Special Forces -- real men have beards."  (<u>Id.</u>).  In selling these t-shirts, CafePress apparently partners with another undisclosed party.  (Resp. to CaféPress M.T.D. at 2).

According to Curran, CaféPress sets the base price for the t-shirt, determines the type of product its joint venture partner may sell, manufactures and prints the t-shirts, and earns money from each t-shirt sold on its website.  (<u>Id.</u> at 2-3).

_____

[3]  Another non-book defendant, Hot Toys, Ltd., is a foreign defendant.  It was served recently and filed its motion to dismiss on January 22, 2008, which is now in the briefing process.

**4**

This action was filed in the Circuit Court of Kanawha County, West Virginia, on May 1, 2007, and removed to this court on June 1, 2007.  On October 5, 2007, the court approved the first amended complaint which replaced the originally-named defendant, Sideshow, Inc., d/b/a Sideshow Collectibles, a Delaware corporation, with current defendant, Sideshow, Inc., a California corporation.

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188

5

(4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." <u>Twombly</u>, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (quoting <u>Iodice v. United States</u>, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." <u>Twombly</u>, 127 S. Ct. at 1965.  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.

Application of the Rule 12(b)(6) standard also requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (quoting <u>Twombly</u>, 127 S. Ct. at 1965; <u>see also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . .

6

inferences from those facts in the plaintiff's favor . . . ."
Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

### III.  Sufficiency of Allegations

Plaintiffs allege the following two counts against all defendants: Invasion of Right of Publicity (Count I) and Invasion of Right of Privacy (Count II).

Courts have struggled to explain the difference between the "similar, but not identical" right of publicity and the misappropriation prong of the right of privacy.  See Allison v. Vintage Sports Plaques, 136 F.3d 1443, 1446 (11th Cir. 1998). Nevertheless, "the right of privacy and the right of publicity protect fundamentally different interests and must be analyzed separately."  Carson v. Here's Johnny Portable Toilets, Inc., 698 F.2d 831, 834 (6th Cir. 1983).

"[T]he rights of publicity and of privacy evolved from similar origins . . . ."  Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 678, n. 26 (7th Cir. 1986). The right of privacy originated in the seminal article authored by Samuel D. Warren and Louis D. Brandeis, The Right to Privacy, 4 HARV. L. REV. 193, 195 (1890).  The right of publicity did not

7

achieve full recognition until 63 years later in the case of

Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d

866, 868 (2d Cir. 1953).  See, e.g., Crump v. Beckley Newspapers,

Inc., 173 W. Va. 699, 714 n. 6, 320 S.E.2d 70, 85 n. 6 (1984);

ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 952 (6th Cir. 2003).

The right of publicity was essentially an outgrowth of

the right of privacy.  See, e.g., ETW Corp., 332 F.3d at 928

(citing J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair

Competition § 1.4 (4th ed. 2007)).  The Second Circuit concluded

a right of publicity was necessary because

> many prominent persons (especially actors and
> ball-players), far from having their feelings bruised
> through public exposure of their likenesses [as in a
> right of privacy claim], would feel sorely deprived if
> they no longer received money for authorizing
> advertisements, popularizing their countenances,
> displayed in newspapers, magazines, busses, trains and
> subways.  This right of publicity would usually yield
> them no money unless it could be made the subject of an
> exclusive grant which barred any other advertiser from
> using their pictures.

Haelen Labs, 202 F.2d at 868.  This right, first recognized in

Haelen Labs, is so named for the value generated by the publicity

associated with a person's likeness.  See, e.g., ETW Corp., 332

F.3d at 929.

In West Virginia, a clear line has been drawn between

the two rights.  Crump, 173 W. Va. at 714 n. 6, 320 S.E.2d at 85

n. 6. "The right of privacy protects individual personality and feelings, the right of publicity protects the commercial value of a name or likeness." **Id.** The Eleventh Circuit has explained

> [t]he appropriation type of invasion of privacy, like all privacy rights, centers on damage to human dignity. Damages are usually measured by "mental distress" -- some bruising of the human psyche. On the other hand, the right of publicity relates to commercial damage to the business value of human identity. Put simplistically, while infringement of the right of publicity looks to an injury to the pocketbook, an invasion of appropriation privacy looks to an injury to the psyche.

**Allison**, 136 F.3d at 1447 (citing J. Thomas McCarthy, 5 **McCarthy on Trademarks and Unfair Competition** § 28:6 (1997)).


A. Count I - Right of Publicity


Invasion of the right of publicity is a state-law claim. **C.B.C. Distribution and Marketing, Inc. v. Major League Baseball Advanced Media, L.P.**, 505 F.3d 818, 822 (8th Cir. 2007) (citing **Zacchini v. Scripps-Howard Broad. Co.**, 433 U.S. 562, 566 (1977)). As of 2003, approximately half of the states had explicitly recognized the right of publicity, either by statute or by common law. See, e.g., **ETW Corp.**, 332 F.3d at 928 n. 13 (citing J. Thomas McCarthy, 5 **McCarthy on Trademarks and Unfair Competition** § 28:6.1). It should be noted that,

> [o]nly Nebraska and New York expressly rejected a
> common law right to publicity, but both of those states
> later recognized a right to publicity with statutory
> enactments.  J. Thomas McCarthy, The Rights of
> Publicity and Privacy, § § 6.1-6.3 (2d ed.).  In fact,
> of the United States territories, only Puerto Rico
> currently rejects the right to publicity.  <u>Guedes v.
> Martinez</u>, 131 F. Supp.2d 272 (D. P.R. 2001).

<u>Bosley v. Wildwett.com</u>, 310 F. Supp.2d 914, 935 (N.D. Ohio 2004).

There is no statutory right of publicity in West Virginia.  The only mention of the right of publicity by the Supreme Court of Appeals of West Virginia was in a footnote in which it cautioned that the right of publicity must not be confused with the right of privacy and then explained the elements of a right of publicity claim.  <u>Crump</u>, 173 W. Va. at 714 n. 6, 320 S.E.2d at 85 n. 6.  Defendants have not disputed that such a right exists in West Virginia.  The <u>Crump</u> footnote explained that a right of publicity claim is for

> the unjust enrichment caused by an unauthorized
> exploitation of the good will and reputation that a
> <u>public figure</u> develops in his name or likeness through
> the investment of time, money and effort.

<u>Id.</u> (internal citations omitted and emphasis added).  Though the Supreme Court of Appeals has yet to definitively consider whether the common-law right exists in West Virginia, given the <u>dicta</u> in <u>Crump</u> and the general acceptance of the doctrine, the court

10

concludes that a common-law right of publicity is cognizable in West Virginia.

Amazon, St. Martin, CaféPress, and Getty contend that plaintiff has not pled all of the elements of a successful right of publicity claim.  (Amazon Memo. in Supp. of M.T.D. at 4; St. Martin Memo. in Supp. of M.T.D. at 2-3; CaféPress Memo. in Supp. of M.T.D. at 6; Getty Memo. in Supp. of M.T.D. at 3).  First, they argue that the complaint does not allege that plaintiff is a public figure.  (Id.).

Plaintiff responds that he is a public figure inasmuch as the photograph of him was taken while he was serving in his capacity as a soldier.  (Resp. to Amazon M.T.D. at 6).  Relying upon Tellado v. Time-Life Books, Inc., 643 F. Supp. 904, 909 (D. N.J. 1986), Curran contends soldiers have been held to be public figures.  (Id.).  In Tellado, the District Court of New Jersey found the attention focused on plaintiff as a representative participant in the Vietnam War made him a public figure.  643 F. Supp. at 909.

In concluding that a soldier may be considered a public figure, Tellado quoted approvingly the following statement found in Prosser and Keeton on Torts at 860:

11

> A public figure has been defined as a person who, by
> his accomplishments, fame, or mode of living, or by
> adopting a profession or calling which gives the public
> a legitimate interest in his doings, his affairs, and
> his character, has become a 'public personage.'  He is,
> in other words, a celebrity.  Obviously to be included
> in this category are those who have achieved some
> degree of reputation by appearing before the public, as
> in the case of an actor, a professional baseball
> player, a pugilist, or any other entertainer.  The list
> is, however, broader than this.  It includes [public
> officers, famous inventors and explorers, war heroes
> and] even ordinary soldiers[, an infant prodigy, and no
> less a personage than the Grand Exalted Ruler of a
> lodge.]  It includes, in short, anyone who has arrived
> at a position where public attention is focused upon
> him as a person.

Tellado, 643 F. Supp. at 909.


The citation Prosser and Keeton used for its assertion
that an ordinary soldier could constitute a public figure,
Continental Optical Co. v. Reed, 119 Ind.App. 643, 646-647, 86
N.E.2d 306, 308 (Ind. App. 1949) (en banc), rehearing denied, 88
N.E.2d 55, implicated a member of a mobile optical Army unit
during World War II.  The War Department took his picture abroad
and published it in the United States in various morale-boosting
publications.  Id. 119 Ind.App. at 646-647, 86 N.E.2d at 308.
The Appellate Court of Indiana found plaintiff had a commercial
value in his image.  Id. 119 Ind.App. at 647, 653, 86 N.E.2d at
308, 310.  Because the right had not yet been dubbed the "right

of publicity," it was couched as an extension of the right of privacy.  <u>Id.</u> 119 Ind.App. at 648-649, 86 N.E.2d at 309.

There appears to be a split of authority over whether being a celebrity is a prerequisite to bringing a right of publicity claim.  The right of publicity is sometimes restricted to celebrities.  <u>See</u>, <u>e.g.</u>, <u>Martin Luther King, Jr., Center for Social Change, Inc. v. American Heritage Products, Inc.</u>, 694 F.2d 674, 676 (11th Cir. 1983) ("The right of publicity may be defined as a celebrity's right to the exclusive use of his or her name and likeness."); <u>Carson v. Here's Johnny Portable Toilets, Inc.</u>, 698 F.2d 831, 835 (6th Cir. 1983) (internal citations omitted) ("The right of publicity has developed to protect the commercial interest of celebrities in their identities.").  "However, it should also be noted that other courts and commentators as well have found that 'non-celebrities should also be permitted to recover upon proof that the appropriated identity possessed commercial value.'"  <u>ETW Corp.</u>, 332 F.3d at 953 (internal citations omitted).  In the latter viewpoint, the notoriety of the plaintiff is relevant to damages rather than liability.  <u>See id.</u>

Regardless, the court need not resolve the issue in this memorandum opinion and order.  Plaintiff's amended complaint

13

does not contain an allegation that he is a public figure, or even a soldier. Because an essential element of the right of publicity claim is lacking, the court grants defendants' motions to dismiss, with respect to Count I, without prejudice.[4]

Plaintiff requests, in the alternative, that he be afforded an opportunity to amend his complaint to add a paragraph describing himself as a public figure. (Resp. to St. Martin M.T.D. at 9). The plaintiff is directed to file a motion to amend and attach a proposed second amended complaint by February 29, 2008, should he continue to desire to maintain a right of publicity claim against the defendants.[5]

_____

[4] Second, St. Martin and Amazon contend that plaintiff has not established that his likeness has commercial value, which the aforementioned defendants assert is implicit in the direction in Crump and an explicit element in other jurisdictions' descriptions of the right of publicity. (Amazon Memo. in Supp. of M.T.D. at 4; St. Martin Reply to Resp. to M.T.D. at 4). As the motion to dismiss for Count I has already been granted on the first ground, the court need not consider this argument at this juncture. The court notes that should the matter become ripe following plaintiff's amendment, the issue will be considered based on the existing briefing together with such additional briefing as the parties may choose to offer.

[5] The request to amend was first articulated in plaintiff's response to St. Martin's motion to dismiss and was filed on June 25, 2007. (Resp. to St. Martin M.T.D. at 8). The court previously ordered that amended pleadings be filed by September 15, 2007. Inasmuch as plaintiff's request to amend was prior to the imposed deadline, the court will use the standard in Rule 15(a) of the Federal Rules of Civil Procedure rather than the

B.  Count II - Right of Privacy


        Like the right of publicity, the right of privacy is a
state-law claim.  Id. at 173 W. Va. at 711, 320 S.E.2d at 82.  In
West Virginia, the right of privacy protects one from

     (1) an unreasonable intrusion upon the seclusion of
     another; (2) an appropriation of another's name or
     likeness; (3) unreasonable publicity given to another's
     private life; and (4) publicity that unreasonably
     places another in a false light before the public.

Syl. pt. 3, Benson v. AJR, Inc., 215 W. Va. 324, 325, 599 S.E.2d
747, 748 (2004) (quoting syl. pt. 8, Crump, 173 W. Va. 699, 320
S.E.2d 70).  Plaintiff alleges the first, second, and fourth
prongs of the four-prong tort of the right of privacy.  (Am.
Compl. ¶¶ 19-21).  Defendants challenge the sufficiency of the
allegations only with respect to the first and fourth prongs.
(Amazon Memo. in Supp. of M.T.D. at 3; St. Martin Memo. in Supp.
of M.T.D. at 3-4; Reply to Resp. to St. Martin M.T.D. at 6-7;
Getty Memo. in Supp. of M.T.D. at 3).

        Although there are no reported West Virginia cases that
consider the elements required for an intrusion upon seclusion
claim in West Virginia, courts have routinely adopted the

---

Rule 16 standard in assessing any motion to amend.  See Fed. R.
Civ. P. 15(a), 16.

15

description of the tort of intrusion upon seclusion set forth in the Restatement (Second) of Torts § 652B.  <u>See</u>, <u>e.g.</u>, <u>Jennings v. Univ. of North Carolina, at Chapel Hill</u>, 444 F.3d 255, 281 (4th Cir. 2006) (applying North Carolina law), <u>overruled on other grounds by</u> 482 F.3d 686 (4th Cir. 2007) (en banc); <u>Ruzicka Elec. and Sons, Inc. v. International Broth. of Elec. Workers, Local 1, AFL-CIO</u>, 427 F.3d 511, 524 (8th Cir. 2005) (en banc) (applying Missouri law); <u>Kline v. Security Guards, Inc.</u>, 386 F.3d 246, 260 (3d Cir. 2004) (applying Pennsylvania law); <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1220-21 (10th Cir. 2003) (applying Oklahoma law);  <u>Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.</u>, 306 F.3d 806, 812 (9th Cir. 2002) (applying Arizona law).

        The Restatement (Second) of Torts, Section 652B defines the tort of unreasonable intrusion as follows:

    One who intentionally intrudes, physically or
    otherwise, upon the solitude or seclusion of another or
    his private affairs or concerns, is subject to
    liability to the other for invasion of his privacy, if
    the intrusion would be highly offensive to a reasonable
    person.

Tracking the Restatement (Second) definition, plaintiff alleges conclusionally that "[t]he defendants and each of them invaded upon Erik Curran's right of privacy by unreasonable intrusion upon his seclusion."  (Am. Compl. ¶ 19).

16

St. Martin and Getty contend plaintiff has not stated a cognizable claim of intrusion upon seclusion. (St. Martin Memo. in Supp. of M.T.D. at 3-4; Reply to Resp. to St. Martin M.T.D. at 6-7; Getty Memo. in Supp. of M.T.D. at 3). Citing <u>Pierson v. Newsgroup Publications, Inc.</u>, 549 F. Supp. 635, 640 (S.D. Ga. 1982), St. Martin argues that a picture of a soldier taken in a combat zone cannot be the basis for an intrusion upon seclusion claim. (Reply to Resp. to St. Martin M.T.D. at 6). In <u>Pierson</u>, summary judgment was granted based on the lack of any physical intrusion. 549 F. Supp. at 640. Yet, the public location of the alleged tort was only a factor in the conclusion in <u>Pierson</u> that there was not an intrusion. <u>Id.</u>

Plaintiff acknowledges that the "photograph was taken of him while deployed in a combat zone" and the photograph of the plaintiff on the cover of the book, a copy of which is attached as an exhibit to plaintiff's responses, appears to corroborate the plaintiff's acknowledgment. (Resp. to CaféPress M.T.D. at 2; Book Jacket, attached as Ex. A to Resp. to M.T.D.). "[T]he place of the occurrence is relevant to a determination of the sufficiency of the evidence of intrusiveness, [but] it is not determinative of whether an intrusion into one's 'solitude and seclusion' has occurred." <u>Evans v. Detlefsen</u>, 857 F.2d 330, 338

17

(6th Cir. 1988).  Comment C to the Restatement (Second) of Torts,

Section 652B explains the point with the following examples:

> Nor is there liability for observing him or even taking
> his photograph while he is walking on the public
> highway, since he is not then in seclusion, and his
> appearance is public and open to the public eye.  Even
> in a public place, however, there may be some matters
> about the plaintiff, such as his underwear or lack of
> it, that are not exhibited to the public gaze; and
> there may still be invasion of privacy when there is
> intrusion upon these matters.

Id.  Stated succinctly, "the privacy which is invaded has to do

with the type of interest involved and not the place where the

invasion occurs."  Evans, 857 F.2d at 338 (citing Galella v.

Onassis, 487 F.2d 986, 994-95 (2d Cir. 1972)).

However, no allegations of this type have been made by

the plaintiff.  Other than the conclusional allegation in the

amended complaint, plaintiff has offered no basis -- neither in

the complaint or the briefing -- as to how defendants have

infringed such an interest that would give rise to an intrusion

upon his solitude or seclusion.  The motions to dismiss of St.

Martin and Getty as to the first prong of the right of privacy

are granted.  Plaintiff has not demonstrated a basis for an

intrusion upon seclusion claim against any of the defendants.

Turning to the fourth prong of the right of privacy, a

claim is actionable "which unreasonably places another in a false

18

light before the public." Crump, 173 W. Va. at 715, 320 S.E.2d at 86.  "One form in which false light invasions of privacy often appears is the use of another's photograph to illustrate an article or book with which the person has no reasonable connection, and which places the person in a false light."  Id. Crump cites a series of examples in which a false light claim has been found.  Id. (citing Leverton v. Curtis Pub. Co., 192 F.2d 974, 977 (3d Cir. 1951) (photograph of a child who was nearly struck by a car next to an article about the role of pedestrian carelessness in causing accidents); Peay v. Curtis Pub. Co., 78 F. Supp. 305, 306 (D. D.C. 1948) (photograph of an honest taxi driver accompanying article about dishonest ones); Gill v. Curtis Pub., 38 Cal.2d 273, 239 P.2d 630, 633 (1952) (photograph of an affectionate couple used to illustrate an article about how love at first sight is founded on sexual attraction and often followed by divorce)).

The elements of a false light claim consist of the following: (1) the false (2) publication (3) of private facts (4) portraying the plaintiff in a false light (5) which would be highly offensive to a reasonable person.  See Benson, 215 W. Va. at 329, 599 S.E.2d at 752; Crump, 173 W. Va. at 716, 320 S.E.2d at 87-88; Davis v. Monsanto Co., 627 F. Supp. 418, 421 (S.D. W.

Va. 1986) (Restatement (Second) of Torts § 652D (1977)).

St. Martin and Getty contest two elements of the false light claim.[6]  First, they contend plaintiff has not pled falsity.  (St. Martin Memo. in Supp. of M.T.D. at 4).  As Crump notes, "the matter publicized as to the plaintiff must be untrue."  Id.  173 W. Va. at 716, 320 S.E.2d at 87.  The amended complaint plainly states that "[t]he defendants and each of them created publicity that unreasonable [sic] placed Erik Curran in a false light before the public."  (Am. Compl. ¶ 21).  Plaintiff also pled that the cover of the book, Killer Elite, features his photograph.  (Id. ¶ 8).  If plaintiff establishes he is not a "killer," then the arguably negative connotation on the cover of the book could be said to portray plaintiff in a false light. The necessary element of falsity has therefore been sufficiently pled in the amended complaint to survive the motions to dismiss of St. Martin and Getty.

Second, "[a] plaintiff in a false light invasion of privacy action may not recover unless the false light in which he was placed would be highly offensive to a reasonable person."

---

[6]  Inasmuch as CaféPress does not contest the sufficiency of plaintiff's allegations for his false light claim, the court need not address the issue with respect to CaféPress's sale of t-shirts.

Crump, 173 W. Va. at 718, 320 S.E.2d at 90 (citing Restatement
(Second) of Torts § 652E(a) (1977)).  The objective standard
"ensures that liability will not attach for the publication of
information so innocuous that notice of potential harm would not
be present."  Id.  Suffice it to observe that a reasonable person
could find his picture under the title "Killer Elite" to be
highly offensive.  Moreover, Crump stated that when the item at
issue in a false light claim does not clearly favor one
construction over the other, the best course is to favor the non-
movant and allow the claim to go forward.  See id. at 173 W. Va.
at 719, 320 S.E.2d at 90.

          Defendants do not contest the remaining element of the
false light claim, which requires that the subject matter was
private before it was publicly disclosed.  See Benson, 215 W. Va.
at 329, 599 S.E.2d at 752; Crump, 173 W. Va. at 716, 320 S.E.2d
at 87-88; Davis, 627 F. Supp. at 421 (citing Restatement (Second)
of Torts § 652D (1977)).

                    IV.  Defenses as a Matter of Law

          Consideration of the affirmative defenses remains.
"Although a motion pursuant to Rule 12(b)(6) invites an inquiry

                              21

into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the <u>face of the complaint clearly reveals the existence of a meritorious affirmative defense</u>." <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 181 (4th Cir. 1996) (internal citation omitted and emphasis added).

Amazon, St. Martin, and Getty argue that, on these facts, the remainder of Count II is barred by the First Amendment. (Amazon Memo. in Supp. of M.T.D. at 3-4; St. Martin Memo. in Supp. of M.T.D. at 5-6; Reply to Resp. to St. Martin M.T.D. at 7-10; Getty Memo. in Supp. of M.T.D. at 3-5; Reply to Resp. to Getty M.T.D. at 4-7). Courts have engrafted exceptions and restrictions to the rights of publicity and privacy in order to "avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest," guaranteed by the First Amendment. <u>Time, Inc. v. Hill</u>, 385 U.S. 374, 382 (1967) (internal citation omitted). Two principal, closely-related exceptions are described as "newsworthy or public interest" and "incidental use." <u>See</u>, <u>e.g.</u>, <u>Williams v. Newsweek, Inc.</u>, 63 F. Supp.2d 734, 736-738 (E.D. Va. 1999). Absent a showing of the defendant's commission of actual malice, as

explained in <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279–280 (1964), both exceptions may bar right of publicity and right of privacy claims. <u>See</u> <u>Crump</u>, 173 W. Va. at 713, 320 S.E.2d at 85 ("in West Virginia, the "right of privacy" does not extend to communications . . . which concern public figures or matters of legitimate public interest . . . ."); <u>Rosemont Enterprises, Inc. v. Random House, Inc.</u>, 58 Misc.2d 1, 6, 294 N.Y.S.2d 122, 129 (N.Y. Sup. 1968) ("Just as a public figure's 'right of privacy' must yield to the public interest so too must the 'right of publicity' bow where such conflicts with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest."); <u>Bankers Trust Co. v. Publicker Industries, Inc.</u>, 641 F.2d 1361, 1364 (2d Cir. 1981) (incidental use exception exists for the right of publicity); <u>Groden v. Random House, Inc.</u>, 61 F.3d 1045, 1049 (2d Cir. 1995) (incidental use was present and barred statutory right of privacy claim). Because the right of publicity claim has been dismissed without prejudice, the court considers the defenses only as a bar to the remaining prongs of the right of privacy claim in Count II, namely, appropriation and false light.

In this section, the court also considers CaféPress's assertion of immunity under the Communications Decency Act of

23

1996 ("CDA"), 47 U.S.C. § 230, and Amazon's contention that the analogy of Amazon to a traditional book seller in <u>Almeida v. Amazon.com, Inc.</u>, 456 F.3d 1316, 1326 (11th Cir. 2006), bars the claims against it.

### A.  Newsworthy or Public Interest Exception

"There are two classes of newsworthy subjects which are privileged under privacy law: public figures and matters of legitimate public interest." <u>Crump</u>, 173 W. Va. at 712, 320 S.E.2d at 83.  The amended complaint does not allege that plaintiff is a public figure.  With respect to the public interest analysis, <u>Crump</u> is again instructive.

> In determining whether a manner of legitimate public interest is involved, the inquiry "focuses on the information disclosed by the publication and asks whether truthful information of legitimate concern to the public is publicized in a manner that is not highly offensive to a reasonable person."  <u>Campbell v. Seabury Press</u>, 614 F.2d at 397; <u>see</u> <u>also</u> <u>Valentine v. C.B.S., Inc.</u>, 698 F.2d 430, 433 (11th Cir. 1983). "Public interest" includes both the dissemination of current events and any "informational material of legitimate public interest." <u>Buzinski v. Do-All Co.</u>, 31 Ill.App.2d 191, 195, 175 N.E.2d 577, 579 (1961); <u>see</u> <u>also</u> W. PROSSER, THE LAW OF TORTS § 117 (1971).

<u>Crump</u>, 173 W. Va. at 712, 320 S.E.2d at 84 (1984).  Plaintiff has not disputed that the public interest exception applies to books.  <u>See</u>, <u>e.g.</u>, <u>Dallesandro v. Henry Holt & Co.</u>, 4 A.D.2d 470, 166

24

N.Y.S.2d 805, 806 (1957). That the publishing company is
primarily in the business of trying to make a profit does not
necessarily detract from the potential newsworthiness. Id.;
Davis v. High Soc'y Magazine, 457 N.Y.S.2d 308, 313 (1982).

> The [newsworthy or public interest] exception, however,
> will not apply if the picture bears "no real
> relationship to the article or the article is an
> advertisement in disguise." Dallesandro, 166 N.Y.S.2d
> at 806 (internal citations omitted). See also Finger,
> 564 N.Y.S.2d 1014, 566 N.E.2d at 144 (internal
> citations omitted). This exception is designed to
> balance the need for the dissemination of news and
> information against an individual's right to control
> the use of his likeness. Falwell, 797 F.2d at 1278;
> Berger, 1995 WL 1056043 at *2.

Williams v. Newsweek, Inc., 63 F. Supp.2d 734, 736 (E.D. Va.
1999), aff'd 202 F.3d 262 (4th Cir. 1999); accord Klein v.
McGraw-Hill, Inc., 263 F. Supp. 919, 921 (D. D.C. 1966).
At least one court has set forth factors to consider in this
balance.

> Courts must decide whether a publication is newsworthy
> based upon: (1) the social value of the published
> facts; (2) the extent of the intrusion into ostensibly
> private matters, and (3) the extent to which a party
> voluntarily assumed a position of public notoriety.
> Newsworthiness depends upon the logical relationship or
> nexus between the event that brought the plaintiff into
> the public eye and the particular facts disclosed, so
> long as the facts are not intrusive in great
> disproportion to their relevance.

Four Navy Seals v. Associated Press, 413 F. Supp.2d 1136,
1146 (S.D. Cal. 2005) (internal citations omitted).

25

Further factual development is needed for the court to adequately gauge all of the relevant considerations in the balance and make a conclusive statement on the matter.  For example, Curran raises the possibility that defendants commercially exploited his image.  He states that the book jacket in question advertises a second book by the author in addition to Killer Elite; the inside contents of the book do not contain Curran's image or likeness and do not refer to him in any way; and the photographs contained in the inside of the book illustrating its contents do not contain pictures of him.  (Resp. to St. Martin M.T.D. at 8).  Curran thus concludes that his picture on the cover was used to advertise the book and the author, not illustrate the subject matter.  (Id.).  In view of these contentions, the applicability of the newsworthy or public interest exception to the torts alleged in Count II cannot be decided at this juncture.  The exception does not presently bar the claim from going forward.

## B. Incidental Use Exception

Although Crump discussed the defenses to a right of privacy action only in terms of newsworthiness and consent, it

explained in the following passage that the incidental use of the
photograph in that case prohibited the plaintiff from proceeding
on her misappropriation claim.  173 W. Va. at 712, 715, 320
S.E.2d at 83, 86.

> Crump's photograph was not published because it was her
> likeness, it was published because it was the likeness
> of a woman coal miner.  It was merely a file photograph
> used as a matter of convenience to illustrate an
> article on women coal miners.  This type of incidental
> use is not enough to make the publication of a person's
> photograph an appropriation.  Therefore, Crump is not
> entitled to recover under the appropriation theory of
> recovery as a matter of law.

Id. at 173 W. Va. at 715, 320 S.E.2d at 86; accord Williams, 63
F. Supp.2d at 737 (E.D. Va. 1999) (internal citation omitted).

        While Crump and Williams were at the summary judgment
stage, the context here is a motion to dismiss.  Consideration of
the motivation for the choice of Curran's likeness on the book
cover or on the t-shirts without the benefit of discovery would
be speculative.  The court finds this area requires factual
elaboration to determine whether the use was incidental.


        C.  CDA Preemption Asserted by CaféPress


        CaféPress asserts that § 230 of the Communications
Decency Act grants it federal immunity from tort liability and

27

preempts Counts I and II.  As the Ninth Circuit notes, CDA immunity exists for both right of publicity claims (such as Count I), see Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1119 n. 5 (9th Cir. 2007), and right of privacy claims (such as Count II), see Carfano v. Metrosplash.com, Inc., 339 F.3d 1119, 1125 (9th Cir. 2003).

Section 230 of the CDA creates a distinction between "interactive computer services," which merely transmit information and "information content providers" that create or develop, in whole or in part, information eventually transmitted. See 47 U.S.C. § 230(f)(2) and (3).  The former may be exempt from tort liability by the CDA, whereas the latter is not.  See id. §§ 230 (c)(1), (e)(3), (f)(2) and (3).

In response to CaféPress's argument that the CDA provides immunity, the plaintiff contends first, an affirmative defense such as CDA immunity is not an appropriate basis for dismissal on a Rule 12(b)(6) motion, and second, that the CDA does not provide immunity for CaféPress as a manufacturer and joint venture partner with a non-defendant third party using plaintiff's image to sell t-shirts.  (Resp. to CaféPress M.T.D. at 2, 9-11).

With respect to the plaintiff's first retort, immunity pursuant to § 230(c) of the CDA constitutes an affirmative defense. <u>Doe v. GTE Corp.</u>, 347 F.3d 655, 657 (7th Cir. 2003). This affirmative defense is generally not fodder for dismissal under Rule 12(b)(6). <u>Id.</u> "Instead, such a defense is generally addressed as a Rule 12(c) or Rule 56 motion." <u>Novak v. Overture Svcs., Inc.</u>, 309 F. Supp.2d 446, 452 (E.D.N.Y. 2004) (citing <u>GTE Corp</u>, 347 F.3d at 657). In both <u>Novak</u> and <u>GTE Corp.</u>, the courts considered the issue of CDA immunity because the plaintiffs in those cases neither protested the court's use of Rule 12(b)(6) nor requested better notice or additional discovery. <u>Id.</u> The claims in both cases were dismissed. <u>Id.</u>

In attempting to distinguish plaintiff's reliance upon the unpublished opinion of <u>Doctor's Associates, Inc. v. QIP Holders, LLC</u>, 82 U.S.P.Q.2d 1603, 1605, 2007 WL 1186026 *2 (D. Conn. 2007),[7] which relied on <u>GTE Corp.</u> and <u>Novak</u>, CaféPress states:

> Since it was unclear from the allegations in the Complaint whether Quiznos [the defendant] created or developed the allegedly infringing commercial at issue, the court in that case held that it could not decide "at this stage of the proceeding" whether the defendant was entitled to immunity. Here . . . there is no

---

[7] Although this opinion is unpublished, it was addressed in the briefing by the plaintiff and CaféPress.

>    allegation that CaféPress created or developed the
>    allegedly infringing photograph on t-shirts offered for
>    sale over the Internet by "Big Bopper Tees" (Response
>    Ex. 1) and hence, CaféPress cannot be an information
>    content provider under the Act.

(Reply to Resp. to CaféPress M.T.D. at 4). This statement
demonstrates the fallacy of CaféPress's argument. CaféPress
relies upon the absence of facts not pled in the complaint and
seeks to place the onus on the plaintiff to plead around
affirmative defenses, which it need not do. See GTE Corp., 347
F.3d at 657.

        In the examples cited by CaféPress for its assertion
that courts have granted motions to dismiss based on the immunity
provided by § 230 of the CDA, either the parties did not dispute
that the defendant was an interactive computer service or there
were allegations in the complaint upon which the court could
reasonably conclude that the defendants were interactive computer
services. See Universal Communication Systems, Inc. v. Lycos,
478 F.3d 413, 415, 418-419 (1st Cir. 2007) (facts alleged in
complaint indicated that defendant was an interactive computer
service); Beyond Systems, Inc. v. Keynetics, Inc., 422 F. Supp.2d
523, 536-37 (D. Md. 2006) (parties did not dispute that the
defendant was an interactive computer service); PatentWizard,
Inc. v. Kinko's Inc., 163 F. Supp.2d 1069, 1071 (D. S.D. 2001)

(parties agreed that defendant was an interactive computer service as defined by the Act and only issue of whether the claims sought to treat defendant as a publisher or speaker of information remained and could be plainly resolved on the face of the complaint); <u>Doe v. Bates</u>, 35 Media L. Rep. 1435, 2006 WL 3813758, *10 (E.D. Tex. 2006) ("based on Plaintiffs' current allegations and the applicable case law, no amount of discovery would establish a set of facts that would entitle Plaintiffs to relief");[8] <u>Gentry v. eBay, Inc.</u>, 99 Cal. App. 4th 816, 833-834 (2002) (allegations of complaint revealed defendant is an interactive computer service).  Here, the amended complaint states merely that CaféPress sold t-shirts featuring plaintiff's likeness.  (Am. Compl. ¶¶ 14, 17).  In the briefing, plaintiff disputes CaféPress's assertion and refers to CaféPress as an information content provider rather than an interactive computer service.  (Resp. to CaféPress M.T.D. at 11).

In order to support its argument that it is an interactive computer service and qualifies for CDA immunity, CaféPress does not address information pled in the complaint or present a stipulation with respect thereto.  Instead, it attempts

---

[8] Although this opinion is unpublished, it was addressed in the briefing by the plaintiff and CaféPress.

to use its own terms of service agreement dated April 11, 2007, posted on its website and attached as Exhibit A to the motion to dismiss.  (CaféPress Memo. in Supp. of M.T.D. at 5).

In arguing that its terms of service webpage may be properly considered on a Rule 12(b)(6) motion, CaféPress, in its section on the applicable standard of review, cites Secretary of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007), Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), and Norfolk Federation of Business Dist. v. HUD, 932 F. Supp. 730, 736 (E.D. Va. 1996).  (CaféPress Memo in Supp. of M.T.D. at 3).  These three cases, however, do not suggest that the court is compelled to consider the CaféPress's terms of service webpage in resolving the motion to dismiss.

CaféPress seizes on the portion of Trimble Navigation, in which our court of appeals states that a court may consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  484 F.3d at 705 (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).  Previously, our court of appeals allowed a court to consider a document not attached to the complaint when "it was integral to and explicitly relied on in the complaint and because the plaintiffs do not

32

challenge its authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (citing Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir.1998); Shaw, 82 F.3d at 1220; Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2nd Cir. 1991)). The terms of service webpage from CaféPress's website is neither integral to the complaint nor authenticated.

As to the requirement that the document must be integral to the complaint, the amended complaint does not refer to CaféPress's terms of service webpage or its website generally. The terms of service webpage is certainly not integral to the essence of Curran's affirmative claims involving the use of his image or likeness. Cf. Blankenship, 471 F.3d at 526 n. 1 (newspaper article, not attached to, but "relied upon," by the complaint was permissibly considered in motion to dismiss); Charles A. Wright & Arthur R. Miller, 5A Federal Practice and Procedure § 1327 (2007) (document may definitely be considered on Rule 12(b)(6) motion when plaintiff has referred to the item in the complaint and it is central to the affirmative case).

Contrary to CaféPress's assertions, the rationale of Knievel is not applicable here. The Ninth Circuit noted, "the purpose of [what it dubs] the ["incorporation by reference"] doctrine is to include all material normally read in conjunction

33

with the allegedly offending material." <u>Knievel</u>, 393 F.3d at 1076.  The incorporation by reference doctrine was invoked in <u>Knievel</u> to consider the surrounding webpages viewers could not avoid in accessing the webpage featuring the allegedly defamatory photograph and caption.  <u>Id.</u> at 1076-77.  Curran's response attaches as an exhibit at least some of CaféPress webpages displaying t-shirts for sale featuring his likeness.  (Website Excerpts, attached as Ex. 1 to Resp. to CaféPress M.T.D.).  Unlike the defendant in <u>Knievel</u>, CaféPress does not argue that its terms of service webpage must be viewed prior to accessing the allegedly infringing use of Curran's image or that it otherwise provides an indispensable context for the allegedly offending images.  Indeed, a user may visit a website frequently without ever viewing particular webpages of the given website.  Thus, webpages from the same website do not necessarily provide a background or a context for other webpages found at that website.  Rather, the relationship between webpages will depend on the configuration of the particular website.

Moreover, with respect to the authenticity of CaféPress's terms of service webpage, it is generally imprudent to rely exclusively on a party's own website in support of its motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>St. Clair v. Johnny's Oyster &</u>

Shrimp, Inc., 76 F. Supp.2d 773, 774-775 (S.D. Tex. 1999)
(internet is catalyst for rumor, innuendo, and misinformation,
with no way of verifying the authenticity" of its contents;
information found on the internet is "inherently untrustworthy
[as] [a]nyone can put anything on the internet . . . [and] can
adulterate the content on any web-site"). A party's website is
self-serving and there is no assurance that the content is
authentic. Id. Relying on a party's website in support of its
argument is akin to relying on their memoranda. See id.

Nevertheless, authenticity is not a bar to
consideration of the document if plaintiff does not challenge it.
Phillips, 190 F.3d at 618. In his response, Curran does not
address consideration of the terms of service webpage. If it
were only a question of the webpage's authenticity the court
could permissibly consider it. However, the court has already
found that the document is not integral to the complaint.

Raising a slightly different point was CaféPress's
reliance on the district court case of Norfolk Federation, which
held that some matters of public record may be considered on a
Rule 12(b)(b) motion. (Memo. in Supp. of CaféPress M.T.D. at 3).
The Eastern District of Virginia considered an extraneous
redevelopment plan of the city attached to a motion to dismiss.

35

Norfolk Federation, 932 F. Supp. at 736-737.  After noting "a
court has wide discretion to exclude matters outside of the
pleadings in order to preserve the motion as one to dismiss,"
Norfolk Federation cited the "unique characteristics" of the
redevelopment plan that it considered in ruling on the motion to
dismiss.  Id. at 736.  At oral argument, the parties agreed that
the redevelopment plan was a public record.  Id. at 737 n. 3.
Suffice it to say that a city's redevelopment plan is of an
entirely different nature than a party's own webpage.  Unlike the
solemnity of a formal city plan, a self-serving webpage is no
more a public record than a flier tacked to a bulletin board.
The court does not find the unique circumstances that existed in
Norfolk Federation to be present here.

     Accordingly, CaféPress's terms of service webpage is
not being considered in deciding the 12(b)(6) motion.  CDA
immunity is a question awaiting discovery and exploration, though
plaintiff faces an uphill battle given the broad grant of
immunity conferred by § 230, as interpreted in the seminal case
of Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir.
1997), cert. denied, 524 U.S. 937 (1998).

     Because the court finds there is no basis upon which §
230 CDA immunity may be conferred at this time, there is no need

to address the merits of plaintiff's second response that CDA
immunity is unavailable inasmuch as plaintiff claims CaféPress
participated in a joint venture.[9]

### D. Amazon as Traditional Book Seller

Defendant Amazon claims it is distinct from the other
defendants insofar as the "sole" allegation as to Amazon is that
it "sells a non-fiction book published by St. Martin's Press,
which contains a cover depicting Mr. Curran, among other things."
(Amaz. Memo. in Supp. of M.T.D. at 2).  Curran has alleged that
Amazon participated in a joint venture with St. Martin and Getty
to appropriate his image to aid in selling books.  (Am. Compl. ¶
10).  Amazon offers the following passage from <u>Almeida</u>, 456 F.3d
at 1326.

> Rather, we find that, as a matter of business practice,
> Amazon's use of book cover images closely simulates a
> customer's experience browsing book covers in a traditional
> book store.
> . . .
> Under the allegations of Almeida's complaint, we discern no
> set of facts by which an internet retailer such as Amazon,
> which functions as the internet equivalent to a traditional
> bookseller, would be liable for displaying content that is
> incidental to book sales, such as providing customers with

---

[9] Plaintiff also suggests, without further elaboration,
that CaféPress is liable to him for what it "does aside from its
internet site."  (Resp. to CaféPress M.T.D. at 10).

access to a book's cover image and a publisher's description
of the book's content.

Id. Unlike in Almeida, where the Eleventh Circuit upheld the
district court's decision to grant Amazon's motion for summary
judgment on the right of publicity and right of privacy counts,
inter alia, the issue here arises in the course of resolving a
motion to dismiss.  Plaintiff is entitled to the opportunity to
prove his allegations of a joint venture.  At this time, Amazon's
argument does not provide the court with a basis to dismiss it
from the litigation.


                              V.


     It is, accordingly, ORDERED as follows:

     1.  Amazon's motion to dismiss be, and it hereby is,
     granted without prejudice as to Count I, granted with
     prejudice as to the first prong of Count II, and denied
     as to the remainder of the motion;

     2.  St. Martin's motion to dismiss be, and it hereby
     is, granted without prejudice as to Count I, granted
     with prejudice as to the first prong of Count II, and
     denied as to the remainder of the motion;

                              38

3.   CaféPress's motion to dismiss be, and it hereby is, granted without prejudice as to Count I, granted with prejudice as to the first prong of Count II, and denied as to the remainder of the motion;

4.    Getty's motion to dismiss be, and it hereby is, granted without prejudice as to Count I, granted with prejudice as to the first prong of Count II, and denied as to the remainder of the motion; and

5.    The plaintiff may file a motion to amend his amended complaint as set forth herein, provided that such filing be made on or before February 29, 2008.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: February 19, 2008

John T. Copenhaver, Jr.
United States District Judge

39